IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MOBIUS MANAGEMENT SYSTEMS, INC.,  :
                                   :
               Plaintiff,       :
                                   :
            v.               :   C.A. No. 05-346 SLR
                                   :
ACARTUS, INC.,                     :
                                   :
               Defendant.   :

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

THE BAYARD FIRM
Kurt M. Heyman (# 3054)
Linda E. Beebe (# 4634)
Email: kheyman@bayardfirm.com
Email: lbeebe@bayardfirm.com
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

Attorneys for Plaintiff
Mobius Management Systems, Inc.

OF COUNSEL:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Randy Lipsitz
Jonathan M. Wagner
Norman C. Simon
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated: July 5, 2005

Table of Authorities ................................................................................................................. iii

Statement of the Nature and Stage of the Proceedings ......................................................... 1

Summary of the Argument ..................................................................................................... 1

Statement of Facts ................................................................................................................. 3

    A.    Plaintiff's strong "Mobius" mark ............................................................... 3

    B.    Acartus' infringement of plaintiff's mark and false
         advertising ............................................................................................... 4

    C.    Mobius' complaint and Acartus' continued violation of
         Mobius' trademark rights and false advertising ........................................ 5

Argument ............................................................................................................................... 6

I.    MOBIUS HAS A STRONG LIKELIHOOD OF SUCCESS
    ON ITS TRADEMARK CLAIM ................................................................. 7

    A.    The marks are identical .......................................................................... 9

    B.    The Mobius trademark is strong ............................................................ 10

    C.    Purchasers, even if sophisticated, are likely to be confused ................... 12

    D.    Actual confusion ................................................................................... 13

    E.    Acartus' intent ...................................................................................... 14

    F.    The goods are marketed through the same channels of trade
         and advertised through the same media .................................................. 14

    G.    The targets of the parties' sales efforts are the same .............................. 15

    H.    Consumers are likely to conclude that the products are
         related .................................................................................................... 15

    I.    Mobius and Acartus already conduct business in the same
         market ................................................................................................... 16

II.    MOBIUS HAS A STRONG LIKELIHOOD OF SUCCESS
    ON ITS FALSE ADVERTISING CLAIM ................................................... 17

III.    MOBIUS WILL SUFFER IRREPARABLE HARM ABSENT
    INJUNCTIVE RELIEF .............................................................................. 18

IV.   ACARTUS WILL SUFFER NO COGNIZABLE HARM IF IT
      IS ENJOINED FROM VIOLATING MOBIUS'
      TRADEMARK RIGHTS AND FALSELY ADVERTISING.....................................19

V.    A PRELIMINARY INJUNCTION WILL ADVANCE THE
      PUBLIC INTEREST ..........................................................................................21

VI.   EXPEDITED DISCOVERY IS APPROPRIATE IN THIS
      CASE AND SHOULD BE GRANTED .......................................................21

Conclusion ..........................................................................................................23

## TABLE OF AUTHORITIES

### CASES

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000) ........8, 9, 11, 12, 17

*Academy of Motion Picture Arts & Sci. v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991) ...............................................................................................12

*Accu Pers., Inc. v. AccuStaff, Inc.*, 823 F. Supp. 1161 (D. Del. 1993) ...............................10, 11, 12

*Acxiom Corp. v. Axiom, Inc.*, 27 F. Supp. 2d 478 (D. Del. 1998) ....................................................9

*Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153 (3d Cir. 1999)....................................................7

*Castrol Inc. v. Pennzoil Co.*, 799 F. Supp. 424 (D.N.J. 1992), *aff'd*, 987 F.2d 939 (3d Cir. 1993)..............................................................................................................20

*Castrol Inc. v. Pennzoil Co.*, 987 F.2d at 941 (3d Cir. 1993) ........................................................21

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270 (3d Cir. 2001)......................................................................................................12, 14, 16

*Country Floors, Inc. v. P'ship of Gepner & Ford*, 930 F.2d 1056 (3d Cir. 1991).........................10

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979)......................................................................................................................18

*Dentsply Int'l Inc. v. Great White, Inc.*, 132 F. Supp. 2d 310 (M.D. Pa. 2000)..............................18

*Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339 (E.D.N.Y. 1994)...............................................................................................19, 20

*Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852 (3d Cir. 1992) ......................................................8

*Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114 (9th Cir. 1990)......................................13

*In re Emulex Corp.*, 6 U.S.P.Q. 2d (BNA) 1312 (T.T.A.B. 1987) ...................................................11

*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466 (3d Cir. 1994)......................7, 9, 10, 13, 15, 16

*Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277 (3d Cir.), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373 (1991)..........................................................................13

*HRL Assocs. Inc. v. Weiss Assocs. Inc.*, 12 U.S.P.Q. 2d (BNA) 1819 (T.T.A.B. 1989),
  *aff'd*, 902 F.2d 1546 (Fed. Cir. 1990) ................................................................................. 16

*Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333 (Fed. Cir. 2001) ....................................... 9

*Int'l Data Group, Inc. v. Ziff Davis Media, Inc.*, 145 F. Supp. 2d 422 (D. Del. 2001) ..... 12-13, 15

*Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983) ........................................... 8, 9, 10, 16

*J&M Turner, Inc. v. Applied Bolting Tech. Prods.*, No. Civ. A 95-2179, 1996 WL 32114
  (E.D. Pa. Jan. 26, 1996) ............................................................................................................. 19

*Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186 (2d. Cir. 1980) ................................... 17

*Jordache Enters., Inc. v. Levi Strauss & Co.*, 841 F. Supp. 506 (S.D.N.Y. 1993) ........................ 16

*Kenner Parker Toys Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350 (Fed Cir.), *cert. denied*,
  506 U.S. 862 (1992) .................................................................................................................... 12

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) ............................................... 13, 14

*Lambda Elecs. Corp. v. Lambda Tech., Inc.*, 515 F. Supp. 915 (S.D.N.Y. 1981) ........................ 11

*McNeilab, Inc. v. American Home Prods. Corp.*, 848 F.2d 34 (2d Cir. 1988) .............................. 19

*Mobilificio San Giacomo S.p.A. v. Stoffi*, No. 96-415-SLR, 1997 WL. 699299 (D. Del.
  Sept. 24, 1997) ............................................................................................................................... 7

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
  129 F. Supp. 2d 351 (D.N.J. 2000) ...................................................................................... 19, 21

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
  290 F.3d 578 (3d Cir. 2002) ...................................................................................................... 17

*Octocom Sys. Inc. v. Houston Computer Servs. Inc.*, 16 U.S.P.Q. 2d (BNA) 1783
  (Fed. Cir. 1990) ...................................................................................................................... 15-16

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187 (3d Cir. 1990) ........................ 21

*Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 611
  (D.N.J. 2003) ............................................................................................................................... 18

*Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*, 858 F. Supp. 1268
  (S.D.N.Y. 1994), *aff'd without op.*, 57 F.3d 1062 (2d Cir. 1995) ............................................ 22

*Rockland Mortgage Corp. v. Shareholders Funding, Inc.*, 835 F. Supp. 182
    (D. Del. 1993) ................................................................................................10, 12, 13,
                                      14, 21

*S.C. Johnson & Son, Inc. v. Clorox Co.*, 930 F. Supp. 753 (E.D.N.Y. 1996)..................................22

*S&R Corp. v. Jiffy Lube Int'l.*, 968 F.2d 371 (3d Cir. 1992).........................................................18

*Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077
    (S.D.N.Y. 1993).................................................................................................................20

*Sun Microsystems Inc. v. SunRiver Corp.*, 36 U.S.P.Q. 2d (BNA) 1266 (N.D. Cal. 1995) ..........11

*Television Enter. Network, Inc. v. Entm't Network, Inc.*, 630 F. Supp. 244 (D.N.J. 1986) ..........20

*Tree Tavern Prods., Inc. v. ConAgra's, Inc.*, 640 F. Supp. 1263 (D. Del. 1986) ..............10, 13, 16

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914 (3d Cir.),
    *cert denied*, 498 U.S. 816 (1990)...................................................................................17

*Versa Prods. Co. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189 (3d Cir.), *cert denied*, 516 U.S.
    808 (1995)...........................................................................................................................13

*W.L. Gore & Assocs., Inc. v. Totes Inc.*, 788 F. Supp. 800 (D. Del. 1992) .....................................18

*Williamson-Dickie Mfg. Co. v. Davis Mfg. Co.*, 251 F.2d 924 (3d Cir. 1958) ...............................10

## STATUTES

15 U.S.C. § 1125(a) ......................................................................................................................1, 17

28 U.S.C. § 1657(a) ..........................................................................................................................22

Fed. R. Civ. P. 26(d) .....................................................................................................................1, 22

Fed. R. Civ. P. 65(a) ...........................................................................................................................1

Lanham Act, Section 43(a) .................................................................................................1, 17, 18, 21

# MISCELLANEOUS

J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* § 11:1
(4th ed. 2005)........................................................................................................10

J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* § 23:15
(3d ed. 1992)........................................................................................................10

J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* § 23:30
(3d ed. 1992)........................................................................................................14

J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* § 30:21
(2d ed. 1984)........................................................................................................21

J. Thomas McCarthy, 3 *McCarthy on Trademarks and Unfair Competition* § 23:6
(4th ed. 2005)........................................................................................................16

<u>Statement of the Nature and Stage of the Proceedings</u>

Plaintiff Mobius Management Systems, Inc. respectfully submits this memorandum in support of its motion for an order, pursuant to Fed. R. Civ. P. 65(a), for a preliminary injunction barring defendant Acartus, Inc. from infringing plaintiff's "Mobius" trademark and engaging in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Mobius further requests expedited discovery pursuant to Fed. R. Civ. P. 26(d).

<u>Summary of the Argument</u>

1.      Mobius is a leading provider of enterprise software products and services designed to optimize the storage, retrieval and presentation of large volumes of data. A public company traded on the NASDAQ exchange, plaintiff has used its "Mobius" mark for over twenty years. During that time, the company has spent substantial sums promoting its goods and services bearing that mark. Today, Mobius' products are sold to private and public organizations across the country and the world, spanning a wide range of industries.

2.      Defendant Acartus, another company in the computer field, claims to market products and services that, like Mobius', enable customers to capture, process, index, store, and access electronically documents and data. Recently, Mobius learned that Acartus was touting a product alternatively called "Mobius DAF Export Utility," "Mobius Replacement Solution," and "ApertureONE Extraction Utility for Mobius DAF Files." This product has no connection whatsoever to the real Mobius. Rather, Acartus is improperly using plaintiff's identical "Mobius" trademark, thereby capitalizing on plaintiff's hard-earned goodwill and reputation and endangering Mobius' control over its mark. Acartus has also made false statements about Mobius' product in promotional material.

3.    On account of these violations of Mobius' Lanham Act rights, Mobius moves for a preliminary injunction to restrain Acartus from its continued unlawful activity.   As demonstrated below, Mobius has more than met its burden on this motion.

4.    On the merits, almost every likelihood-of-confusion factor weighs in favor of a finding of trademark infringement.   Indeed, that the parties' products directly compete and the marks are identical alone supports an injunction.   Moreover, Mobius is likely to succeed on its false advertising claim because it can show that Acartus is making literally false statements in its promotional material.

5.    The presumption that an injured trademark plaintiff suffers irreparable harm is clearly applicable here.   If Acartus is allowed to use the "Mobius" mark, Mobius will, by losing control of its mark, lose control over its hard-earned reputation in the highly competitive computer software market in which Mobius operates.   By contrast, a preliminary injunction would not cause much hardship to Acartus.   The product Acartus touts as "Mobius DAF Export Utility" and "Mobius Replacement Solution" is just one of Acartus' many products.   Any harm to Acartus occasioned by a name change would thus be negligible.   Likewise, the presumption that a comparative false ad causes irreparable harm is applicable here.

6.    Issuing an injunction will advance the public interest by promoting truthful advertising and representations as to source, thereby ensuring fair competition in the marketplace.

7.    Mobius also believes that Acartus is using Mobius' trade secrets in reverse engineering its product.   Thus, Mobius requests expedited discovery addressed to that issue.

## Statement of Facts

The following facts are set forth in the declaration of Mitchell Gross, President of Mobius, and the declaration of Jonathan M. Wagner, Esq., counsel to Mobius.

A.    Plaintiff's strong "Mobius" mark

Mobius develops, licenses and supports computer software and related products designed to optimize the storage, retrieval and presentation of data, principally transactional information. Founded in 1981, Mobius has since grown to become one of the leaders in its field. Mobius is a publicly traded company, listed on the NASDAQ Exchange by the symbol "MOBI." The company has a large sales force and several offices across the country and in Europe. Mobius also operates a website under the registered domain name *mobius.com.* (Gross decl., ¶ 2). Reflecting widespread acceptance of its products by the market, Mobius' software is sold and licensed throughout the United States and the world. Mobius' computer software and other products have been licensed and sold to customers in a broad variety of industries, including banking, telecommunications, retail, utilities, financial, healthcare, government, insurance, manufacturing and transportation. (*Id.* at ¶ 3). One of Mobius' principal software products is ViewDirect, a data-storage software program. (*Id.*).

Beginning in 1981 and continuing through today, Mobius has marketed and sold its software and related products under its name and trademark "Mobius." (*Id.* at ¶ 4). Mobius has been using its mark in interstate commerce regularly since 1981. In addition, over the years Mobius has spent considerable time and effort, as well as a substantial amount of money, promoting its "Mobius" mark and the products and services it sells under that mark. Mobius has likewise spent substantial sums in advertising for products and services bearing the "Mobius" trademark, and the mark now embodies the goodwill that Mobius has created through its promotion, sale and licensing of goods and services under that mark. (*Id.*).

593190v1

3

Mobius has registered its Mobius mark with the United States Patent and Trademark Office. (*Id.* at ¶ 5 & Exh. B). In addition to the "Mobius" mark, Mobius has used since 1992 and has registered the mark "ViewDirect" with the United States Patent & Trademark Office. The ViewDirect registration is now incontestable under the federal trademark statute. (*Id.* & Exh. C).

B.    Acartus' infringement of plaintiff's mark and false advertising

According to its website, Acartus was founded in 1992 and has 1,800 customers. Acartus sells a data management system called ApertureONE, which competes directly with Mobius' ViewDirect product. (Gross decl., ¶ 6). In May of this year, Mobius learned that in connection with its promotion of ApertureONE, Acartus was marketing a product called the "Mobius DAF Export Utility." This product purports to enable Mobius customers to migrate entire archives out of Mobius' "DAF format" into a specification that may be stored in an ApertureONE repository. (*Id.* at ¶ 7& Exh. D).

As part of its advertising for this product, Acartus posted a promotional selling sheet on its website. In that selling sheet, Acartus improperly used the "Mobius" mark in the name of its own product: "Mobius DAF Export Utility." Acartus also repeatedly referenced the marks "Mobius" and "View Direct" in the promotional sheet without any attribution of Mobius' trademark ownership. (*Id.* at ¶ 8 & Exh. D).

In addition to its infringing use of the federally registered Mobius marks, Acartus made several false and misleading statements in the promotional data sheet for its "Mobius DAF Export Utility." Among these were Acartus' claim that:

> Due to proprietary storage models such as Mobius' DAF format, continued access of this content has posed some difficult decisions for enterprises. Companies have had to either perform a manual transformation of content, or continue to support their deep archive storage. Manually transforming legacy content, whether

performed internally or outsourced to a services group, poses a
tremendous cost of time and resources.

(*Id.* at ¶ 9 & Exh. D).

These claims are false on their face. No manual transformation of content is
required in ViewDirect. Data in ViewDirect is stored in its original format and can be
distributed and printed in that format. In addition, the content can be automatically transformed
for presentation in web browser friendly formats using a Mobius product called DocumentDirect
for the Internet. Moreover, no outsourcing or services are required to transform ViewDirect
content for presentation purposes. (Gross decl., ¶ 10).

Acartus also makes the false statement in the promotional piece that "continuing
to support a legacy archival system such as Mobius perpetuates a series of unnecessary licensing,
services and maintenance costs." As set forth in Mr. Gross' declaration, that statement is also
false. (*Id.* at ¶ 11 & Exh. D).[1]

C.    Mobius' complaint and Acartus' continued violation
      of Mobius' trademark rights and false advertising

On May 31, 2005, Mobius commenced an action against Acartus, asserting claims
for trademark infringement and false advertising, as well as for false representation/designation
of origin, deceptive trade practices and unfair competition. (Wagner decl., ¶ 2). Soon thereafter,
counsel for Acartus contacted counsel for Mobius. Acartus represented that it would like to
resolve the matter promptly by making changes to the offending ad. (*Id.* at ¶ 3). Mobius

---

[1]    After the inception of this lawsuit, Acartus proposed to drop the claims from the selling sheet.
(Wagner decl., ¶ 4). In light of Acartus' failure to live up to other representations concerning its misuse
of Mobius' trademark (discussed below), Mobius has no reason to believe Acartus will abide by this
representation concerning its advertising.

informed Acartus that it planned to move for a preliminary injunction unless the matter was resolved and unless Acartus took down the data sheet from its website immediately. (*Id.* at ¶ 4). Acartus' counsel represented that he would instruct his client to take the promotional piece down now while the parties discussed settlement. Acartus also represented that it would provide a revised data sheet for Mobius' consideration. (*Id.*).

On June 6, 2005, Acartus submitted a revised data sheet for Mobius' consideration. Upon receipt of this proposal, Mobius put Acartus on notice that it should "refrain from re-posting" the data sheet until Mobius could evaluate the proposal. Counsel for Acartus responded, "Understood. Thanks." (*Id.* at ¶ 5 & Exh. A). Mobius' counsel later informed Acartus that the proposed revised promotional material still infringed Mobius' rights. (*Id.* & Exh. B).

Meanwhile, Acartus posted an offending promotional piece elsewhere on the internet. A search of the term "ViewDirect" on the search engine *google.com* found a "sponsored link" to Acartus' website with the description, "Mobius Alternative. Migrate content trapped in Mobius to an open-standards ERM platform." (Gross Decl., ¶ 13 & Exh. E). Clicking that link led to a slightly revised — yet equally offending — promotional sheet. The headline for the piece reads, "Mobius Replacement Solution." (*Id.* & Exh. F). Instead of "Mobius DAF Export Utility," Acartus refers to its product by the name "ApertureONE Extraction Utility for Mobius DAF Files." (*Id.*). Shortly after finding the new promotional piece on the internet, Mobius brought this application. (*Id.* at ¶ 14).

Argument

A party seeking a preliminary injunction must show: (i) a likelihood of success on the merits, (ii) that it will suffer irreparable harm if the injunction is denied, (iii) that the harm to the moving party outweighs possible harm to the other party, and (iv) that the public interest

favors such relief.  *See Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999);

*Mobilificio San Giacomo S.p.A. v. Stoffi*, No. 96-415-SLR, 1997 WL 699299, at *2 (D. Del.

Sept. 24, 1997) (Exh. 1, attached).    As demonstrated below, Mobius has satisfied these

requirements.

I.    MOBIUS HAS A STRONG LIKELIHOOD
      OF SUCCESS ON ITS TRADEMARK CLAIM

          To demonstrate a likelihood of success on the merits in a trademark infringement

action, a plaintiff must establish that (i) the mark is valid and legally protectible, (ii) plaintiff

owns the mark, and (iii) defendant's use of the mark is likely to create confusion about the origin

of the goods or services.  *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d

Cir. 1994); *Giacomo*, 1997 WL 699299, at *3.

          In this case, the first two prongs have been satisfied by Mobius' registration of its

"Mobius" mark with the United States Patent and Trademark Office.    (Gross decl., ¶ 5 &

Exhs. B, C).  *See Fisons*, 30 F.3d at 472.  As this Court has observed:

> The Lanham Act provides in part that "[a] certificate of registration
> of a mark upon the principal register . . . shall be *prima facie*
> evidence of the validity of the registered mark . . ., the registrant's
> ownership of the mark, and of the registrant's exclusive right to
> use the registered mark in commerce."  Thus, the mere fact of
> registration establishes not only validity but also the registrant's
> ownership and exclusive right to use the registered mark.

*Giacomo*, 1997 WL 699299, at *3 (citations omitted).  Moreover, the validity of a mark is

presumed without a showing of secondary meaning when, as here, the mark is inherently

distinctive.  *See Fisons*, 30 F.3d at 472 (citations omitted); discussion below at 10-12.

          Mobius' likelihood of success on the merits of its trademark claim centers on the

resolution of the third prong of the analysis: whether Acartus' use of the mark to identify goods

or services is likely to cause confusion about the origin of the goods or services.   Confusion

exists when "'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992) (citation omitted). In this Circuit, ten factors are relevant to the likelihood of confusion inquiry:  (i) the degree of similarity between the owner's mark and the alleged infringing mark, (ii) the strength of the owner's mark, (iii) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase, (iv) the length of time the defendant has used the mark without evidence of actual confusion arising, (v) the intent of the defendant in adopting the mark, (vi) evidence of actual confusion, (vii) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media, (viii) the extent to which the targets of the parties' sales efforts are the same, (ix) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors, and (x) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market. *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).  These factors have been described as "tools to guide a qualitative decision," and "may properly be accorded different weights depending on the particular factual setting.  A district court should utilize the factors that seem appropriate to a given situation." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 215-16 (3d Cir. 2000).

A court need not analyze all the factors in every case.  Indeed, the similarity of the marks and the relatedness of the goods factors may alone be sufficient to demonstrate a likelihood of confusion:

> If products are directly competing, and the marks are clearly very
> similar, a district judge should feel free to consider only the
> similarity of the marks themselves. . . . [T]he court often need not
> apply each and every factor; *when goods are directly competing,*
> *both precedent and common sense counsel that the similarity of the*
> *marks takes on great prominence.*

*Id.* at 214 (emphasis added). *See also Acxiom Corp. v. Axiom, Inc.*, 27 F. Supp. 2d 478, 492 (D.

Del. 1998); *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1338 (Fed. Cir. 2001)

(noting with approval the TTAB's finding of a likelihood of confusion based on only similarity

of marks and relatedness of goods factors).

    Here, the marks are identical and the products are the same. If that were not

enough, a review of the other *Lapp* factors further demonstrates that the likelihood of consumer

confusion is overwhelming and that therefore Mobius' application for a preliminary injunction

should be granted. *See Lapp*, 721 F.2d at 462 ("Once a trademark owner demonstrates

likelihood of confusion, it is entitled to injunctive relief.").

A.  The marks are identical

    This factor weighs decisively in favor of a finding of confusion: Acartus is using

as the name of one of its products the identical "Mobius" name that plaintiff has used nationwide

for over twenty years. Indeed, "degree of similarity of the marks may be the most important of

the ten factors in *Lapp.*" *Fisons*, 30 F.3d at 476. *See also Acxiom*, 27 F. Supp. 2d at 495

(similarity of marks "is '[p]erhaps the most important' of the ten *Lapp* factors. . . . The Third

Circuit has held that 'if the overall impression created by the marks is essentially the same, "it is

very probable that the marks are confusingly similar'").

    Since "Mobius" is the core phrase of plaintiff's trademark, Acartus' addition of

descriptive words "DAF Export Utility," "ApertureONE Extraction Utility," or "Replacement

Solution" will not diminish any confusion. *See Fisons*, 30 F.3d at 477 ("[A] subsequent user

may not avoid likely confusion by appropriating another's entire mark and adding descriptive or

non-descriptive matter to it.") (quoting J. Thomas McCarthy, 2 McCarthy on Trademarks and

Unfair Competition § 23:15[8] at 23-102 (3d ed. 1992)).  Even when a challenged trademark is

not precisely identical to the protected name, courts routinely find actionable confusion.  *See*

*Country Floors, Inc. v. P'ship of Gepner & Ford*, 930 F.2d 1056, 1063 (3d Cir. 1991) (where

dominant portions of two marks, "Country Floors" and "Country Tiles," are the same, confusion

is likely); *Lapp*, 721 F.2d at 463 ("Lapp" and "Lapp Cable" identical for all practical purposes);

*Williamson-Dickie Mfg. Co. v. Davis Mfg. Co.*, 251 F.2d 924, 926-27 (3d Cir. 1958) ("Dickie

Davis" and "Dickie's" confusingly similar marks for boy's clothing); *Accu Pers., Inc. v.*

*AccuStaff, Inc.*, 823 F. Supp. 1161, 1164 (D. Del. 1993) ("Accu" and "Acosta" share identical

dominant feature and therefore are very similar); *Tree Tavern Prods., Inc. v. ConAgra's, Inc.*,

640 F. Supp. 1263, 1270 (D. Del. 1986) ("similarity between the marks 'Side Dish' and 'Banquet

Side Dish for One' is obvious"); *Fisons*, 30 F.3d at 476-78 ("Fairway" and "Fairway Green"

sufficiently similar to be confusing).

B.      The Mobius trademark is strong

            "The strength of a mark is a measure of the mark's . . . 'tendency to identify the

goods sold under the mark as emanating from a particular, although possibly anonymous,

source.'"  *Accu Pers.*, 823 F. Supp. at 1165.  *Accord Rockland Mortgage Corp. v. Shareholders*

*Funding, Inc.*, 835 F. Supp. 182, 192-93 (D. Del. 1993).  The strength of a mark depends on the

distinctiveness or conceptual strength of the mark, and the commercial strength or marketplace

recognition of the mark.  *Fisons*, 30 F.3d at 479.  Trademarks are categorized as either generic,

descriptive, suggestive or arbitrary/fanciful.    Arbitrary and fanciful marks are protectible

immediately upon use, without a showing of secondary meaning.    J. Thomas McCarthy,

2 *McCarthy on Trademarks and Unfair Competition* § 11.1 (4th ed. 2005).

The Mobius mark is arbitrary and fanciful — which, standing alone, would entitle plaintiff to trademark protection. *See Accu Pers.*, 823 F. Supp. at 1165 ("[T]he closer to the fanciful/arbitrary end of the spectrum a mark is found to fall, the stronger it is said to be."). The name Mobius is derived from the "Mobius strip" which, in the American Heritage College Dictionary, is defined as a "continuous one-sided surface formed from a rectangular strip by rotating one end 180° and attaching it to the other end." Mobius' mark is arbitrary because the meaning of the word Mobius does not describe plaintiff's software and related products, which optimize the storage, retrieval and presentation of data. *See A & H Sportswear*, 237 F.3d at 221 ("Arbitrary or fanciful marks use terms that neither describe nor suggest anything about the product; they 'bear no logical or suggestive relation to the actual characteristics of the goods.'") (citation omitted).

Courts have routinely held that similar dictionary-defined words, as used by companies that market computer-related products, are strong marks when, as here, the meaning of the word has nothing to do with the trademark owner's products. For example, in *Lambda Elecs. Corp. v. Lambda Tech., Inc.*, 515 F. Supp. 915, 925 (S.D.N.Y. 1981) the court held that "Lambda" marks, as applied to computer software in the information processing market, "being common words or symbols applied in an unfamiliar way, are clearly 'arbitrary' and thus fall in the strongest category of marks." *See also Sun Microsystems Inc. v. SunRiver Corp.*, 36 U.S.P.Q.2d (BNA) 1266, 1269 (N.D. Cal. 1995) ("SUN is an arbitrary mark because it does not describe computer products."); *In re Emulex Corp.*, 6 U.S.P.Q.2d (BNA) 1312, 1314 (T.T.A.B. 1987) (the mark "Javelin" as applied to pre-recorded computer programs in machine readable form is an "arbitrary term" and a "strong mark").

As a distinctive mark, the Mobius mark is eligible for trademark protection without proof of secondary meaning. *See Accu Pers.*, 823 F. Supp. 1165 (secondary meaning need not be demonstrated for a mark to merit protection if the mark is inherently distinctive). However, to make matters even clearer, plaintiff's Mobius mark has achieved secondary meaning through Mobius' extensive use and substantial advertising and marketing efforts over the past twenty-four years. (Gross decl., ¶ 4). Mobius' mark has substantial strength in the marketplace. (*Id.*). *See A & H Sportswear*, 237 F.3d at 224 ("[E]vidence of money spent [on advertising market] . . . is clearly relevant" to the mark's commercial strength.). On account of plaintiff's considerable time, money and effort, the "Mobius" name has been inexorably linked with plaintiff's data management and network application products and services. *See, e.g., Rockland Mortgage*, 835 F. Supp. at 193 ("Plaintiff offers evidence of advertising and sales which are anything but 'meager' and 'feeble.'"). As a strong mark, "Mobius" is therefore entitled to a great deal of protection under the trademark laws. *See Academy of Motion Picture Arts & Sci. v. Creative House Promotions, Inc.* 944 F.2d 1446, 1455 (9th Cir. 1991) (strong mark "should be given the strongest possible protection against infringement"); *Kenner Parker Toys Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 353 (Fed Cir.) ("A strong mark . . . casts a long shadow which competitors must avoid"), *cert. denied*, 506 U.S. 862 (1992).

C.    Purchasers, even if sophisticated,
       are likely to be confused

The third *Lapp* factor recognizes that in certain product markets "consumers exercise heightened care in evaluating the relevant products before making purchasing decisions." *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 284 (3d Cir. 2001). For that reason, "courts must determine whether the price or importance of a product will impact a consumer's attention to the brand purchased." *Int'l Data Group, Inc. v. Ziff Davis*

*Media, Inc.*, 145 F. Supp. 2d 422, 436 (D. Del. 2001). While some of the consumers in the market that Mobius and Acartus serve may be sophisticated purchasers, "[w]here both professionals and the general public are relevant consumers, 'the standard of care to be exercised . . . will be equal to that of the least sophisticated consumer in the class.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 716 (3d Cir. 2004). *See also Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990) ("customers, regardless of their sophistication, were likely to be confused by two computer companies using the mark ECLIPSE").

Even if the most sophisticated customer was the right measure, Mobius can still demonstrate a likelihood of confusion by the preponderance of the other *Lapp* factors. It is widely-accepted that "'when there is a strong likelihood of confusion from other factors, even a high level of care exercised by a consumer[ ] will not be sufficient to overcome likelihood of confusion.'" *Rockland Mortgage*, 835 F. Supp. at 194 (citations omitted).

D.    Actual confusion

To obtain an injunction, "[p]roof of actual confusion is not necessary." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir.), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373 (1991); *Fisons*, 30 F.3d at 476 ("while evidence of actual confusion would strengthen plaintiff's case, it is not essential"). Although Mobius at present does not have evidence of actual confusion, this absence must be balanced against the short time period between the date Mobius became aware of Acartus' use of the Mobius name and the date Mobius moved for a preliminary injunction. *Tree Tavern*, 640 F. Supp. at 1272; *Versa Prods. Co. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 205 (3d Cir.), *cert. denied*, 516 U.S. 808 (1995) ("lack of evidence of actual confusion (at least where the time period that the two products have been in competition is short . . . does not raise an inference that there is no likelihood of confusion.").

Therefore, in light of the circumstances of this case, the actual confusion factors have little if any bearing here.

E.    Acartus' intent

        "[G]ood faith intentions of an infringer are no defense to a finding of liability." *Rockland Mortgage*, 835 F. Supp. at 195 (*citing* 2 McCarthy § 23.30[2] at 23-192-93). By contrast, however, "[a]doption of a mark in order to take advantage of the good will or reputation of a prior user is probative of likelihood of confusion." *Id.* at 194 (citation omitted). Acartus' intent in adopting Mobius' mark weighs strongly in Mobius' favor in this motion. Acartus purposefully incorporated Mobius' mark into a product targeted at Mobius' customers. *See Kos Pharm.*, 369 F.3d at 721 ("[defendant's] knowledge of similar marks . . . [is] highly relevant"). Equally critical, after the commencement of this lawsuit, Acartus represented that it would remove the offending material, including "Mobius DAF Expart Utility" from its website. (Wagner decl., ¶ 4). Notwithstanding this representation, Acartus posted another data sheet that continued to infringe the Mobius mark, making claims for "Mobius Replacement Solution" and "ApertureONE Extraction Utility for Mobius DAF Files." (*Id.* at ¶ 6; Gross decl., ¶ 13 & Exh. E, F). Acartus' intent — and ensuing conduct — is highly probative of a likelihood of confusion. *See Checkpoint*, 269 F.3d at 286 ("[E]vidence of 'intentional, willful and admitted adoption of a mark closely similar to the existing mark[ ]' weighs strongly in favor of finding [a] likelihood of confusion.") (citations omitted).

F.    The goods are marketed through the same channels
    of trade and advertised through the same media

        In general, "the greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion." *Checkpoint*, 269 F.3d at 288-89 (quotation omitted). Here, both Mobius and Acartus do business in the computers software field, selling systems and

networks.  Both Mobius and Acartus operate websites to attract consumers, to publicize product developments (as was done with the product at issue), and to facilitate business transactions. (Gross decl., ¶¶ 2, 8-13).  It is also noteworthy that a link to the offending Acartus selling sheet can be found by performing a "google" search for Mobius' product ViewDirect.  (*Id.* at ¶ 13). Thus, this factor weighs strongly in Mobius' favor.

G.    The targets of the parties' sales efforts are the same

Because Acartus directly targets Mobius' customers this factor also favors Mobius.  *See Int'l Data Group*, 145 F. Supp. 2d at 439 (finding likelihood of confusion where "both products are marketed to chief information officers and other senior corporate executives interested in information technology").

H.    Consumers are likely to conclude that
       the products are related

The similarities in the functions of the parties' data management systems — storage of data — underscore a likelihood of confusion in the minds of consumers.  "The question is whether the consumer might . . . reasonably conclude that one company would offer both of these related products . . . [where] the relationship of the products was close enough to lead to the likelihood of confusion and the relationship of those products" *Fisons*, 30 F.3d at 481.  A consumer certainly could be confused as to the source of two computer products, whose names and claimed functions are so similar.  *See, e.g., Octocom Sys. Inc. v. Houston Computer Servs. Inc.*, 16 U.S.P.Q.2d (BNA) 1783, 1788 (Fed. Cir. 1990) ("purchasers would likely be confused when goods as closely related as modems and computer programs are sold under the

virtually identical marks" of "Octocom" and "Octocomm"). Therefore, the ninth factor of the *Lapp* test weighs in favor of a finding of a likelihood of confusion.[2]

I.    Mobius and Acartus already conduct
      business in the same market

In this case, the likelihood of expansion inquiry — which looks "not only at the likelihood of expansion, but also at facts 'suggesting the consuming public might expect the prior owner to manufacture a product in the defendant's market,'" *Fisons*, 30 F.3d at 480 (quoting *Lapp*, 721 F.2d at 463) — is academic because the parties already conduct business in the same market.

* * *

In short, application of the *Lapp* factors establishes a strong likelihood of confusion on account of Acartus' use of the Mobius trademark. Virtually every factor favors Mobius' position, and "the factors that do not . . . are either ambiguous or only marginally relevant." *Tree Tavern*, 640 F. Supp. at 1272. This more than satisfies Mobius' burden. If that

---

[2]    Even if potential purchasers ultimately learn during the purchase process that Acartus' product is not associated with Mobius, that would not ameliorate the actionable harm caused by Acartus. A plaintiff can demonstrate trademark infringement by showing that "potential customers initially are attracted to the junior user's mark by virtue of its similarity to the senior user's mark, even though these consumers are not actually confused at the time of purchase . . . ." *Jordache Enters., Inc. v. Levi Strauss & Co.*, 841 F. Supp. 506, 514-15 (S.D.N.Y. 1993) (citation omitted). Such "initial interest" is a recognized form of likelihood of confusion: "Infringement can be based upon confusion that creates initial customer interest, even though no actual sale is finally completed as a result of the confusion." J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition § 23:6 (4th ed. 2005) (citing, *inter alia*, *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 60 U.S.P.Q.2d 1609 (3d Cir. 2001) ("We join these circuits in holding that initial interest confusion is probative of a Lanham Act violation.")). Courts routinely find such actionable initial interest confusion when, as here, the parties' trademarks are strikingly similar. In addition, courts specifically have found such confusion with respect to potential purchasers of specialized computer programs. *HRL Assocs. Inc. v. Weiss Assocs. Inc.*, 12 U.S.P.Q.2d (BNA) 1819, 1823 (T.T.A.B. 1989) (sophistication of the purchasers did not overcome likelihood that they would be confused "at an early stage in the buying decision"; there can be infringement if a potential purchaser is "initially confused between the parties' respective marks, in that the [plaintiff's product] may be precluded from further consideration by the potential purchaser in reaching his or her buying decision"), *aff'd*, 902 F.2d 1546 (Fed. Cir. 1990).

were not enough, because Acartus is using Mobius' exact mark, the Court "should feel free to consider only the similarity of the marks themselves. . . [and] need not apply each and every factor." *A & H Sportswear*, 237 F.3d at 214.  Mobius' likelihood of success on its trademark claim is therefore exceptionally strong.

II.    MOBIUS HAS A STRONG LIKELIHOOD
       OF SUCCESS ON ITS FALSE ADVERTISING CLAIM

Section 43(a) on the Lanham Act, 15 U.S.C. § 1125(a), imposes liability on a defendant who makes materially false statements about its own or a competitor's products in interstate commerce. *See U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 921-23 (3d Cir.), *cert denied*, 498 U.S. 816 (1990).  Intent is not an element of a false advertising claim under the Lanham Act. *See Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189 (2d. Cir. 1980).

When advertising is unambiguous and literally false, courts will grant injunctive relief without requiring extrinsic evidence of the impact of the advertising on the public.  As the Court of Appeals has observed:

> When consumer deception can be determined by examining the
> challenged name or advertising on its face, the plaintiff is excused
> from the burden of demonstrating actual deception through the use
> of a consumer survey.

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 587 (3d Cir. 2002).

In its original promotional data sheet, Acartus' claims that Mobius' DAF format "requires companies to perform a manual transformation of content."  That statement is false because no manual transformation of content is required in Mobius ViewDirect.  (Gross decl., ¶ 10).  Rather, data in ViewDirect is stored in its original format and can be distributed and

printed in that format. (*Id.*). In addition, the content can be automatically transformed for presentation in web browser friendly formats using a Mobius product called DocumentDirect for the Internet. (*Id.*). Moreover, no outsourcing or services are required to transform ViewDirect content for presentation purposes. (*Id.*). Acartus also makes the false statement that "continuing to support a legacy archival system such as Mobius perpetuates a series of unnecessary licensing, services and maintenance costs." (*Id.*).

In light of the foregoing, Mobius will likely prevail on its false advertising claim under Section 43(a) of the Lanham Act. When a plaintiff in a false advertising case makes a showing that the advertising is false, preliminary injunctive relief is generally awarded. *See, e.g., W.L. Gore & Assocs., Inc. v. Totes Inc.*, 788 F. Supp. 800, 803 (D. Del. 1992); *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 611 (D.N.J. 2003); *Dentsply Int'l Inc. v. Great White, Inc.*, 132 F. Supp. 2d 310 (M.D. Pa. 2000).

III.    MOBIUS WILL SUFFER IRREPARABLE
        HARM ABSENT INJUNCTIVE RELIEF

Since Acartus' use of the "Mobius" mark is likely to cause confusion, irreparable harm is established as a matter of law. *S&R Corp. v. Jiffy Lube Int'l*, 968 F.2d 371, 378-79 (3d Cir. 1992). That is because trademark confusion can irreparably injure one's business reputation: "The trademark laws are designed not only to prevent consumer confusion but also to protect 'the synonymous right of a trademark owner to control his product's reputation.'" *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F. 2d 200, 205 (2d Cir. 1979) (citation omitted).

Beyond that, to the extent that consumers are misled into believing that the products and services advertised or marketed by Acartus in conjunction with the "Mobius" designation are manufactured, sponsored, endorsed by or otherwise associated with Mobius, the

goodwill that Mobius so painstakingly established will be impaired. And if preliminary relief is not granted, additional non-authorized uses of the "Mobius" mark by Acartus and perhaps others may result, further and irreparably diminishing the value of the "Mobius" trademark to plaintiff.

Finally, when a party seeking a preliminary injunction demonstrates a likelihood of success in showing that a comparative advertisement is literally false, irreparable harm is presumed. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co,*, 129 F. Supp. 2d 351, 367 (D.N.J. 2000) (citing *McNeilab, Inc. v. American Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988)); *J&M Turner, Inc. v. Applied Bolting Tech. Prods.*, No. Civ. A 95-2179, 1996 WL 32114, at *12 (E.D. Pa. Jan. 26, 1996) (Exh. 2, attached) ("The presumption is provided because courts assume that a false direct comparison necessarily harms the goodwill of the victimized firm, and therefore constitutes irreparable harm.").

Under these circumstances, preliminary relief is urgently needed.

IV.    ACARTUS WILL SUFFER NO COGNIZABLE HARM
       IF IT IS ENJOINED FROM VIOLATING MOBIUS'
       TRADEMARK RIGHTS AND FALSELY ADVERTISING

As shown above, Acartus' use of the "Mobius" designation in connection with its products or services makes confusion as to source, affiliation and sponsorship inevitable. Continued use of the "Mobius" mark will create real and irreparable harm to the goodwill associated with plaintiff's trademark. On the other hand, the harm to Acartus resulting from an injunction should be negligible. Here, as in *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1357 (E.D.N.Y. 1994), "[t]he only detriment the defendants are now facing is the prospect of continuing their business without the benefit of plaintiff's substantial advertising and good will. But this detriment is of no concern at all, for 'in cases of piracy of a mark . . . the court imposes the chance of loss upon those who deliberately steal the name.'" (citation omitted).

593190v1

19

Further underscoring the absence of any hardship to Acartus, an injunction would not require Acartus to change the name of its company; rather, Acartus would merely have to change the name of one of its many products. *Television Enter. Network, Inc. v. Entm't Network, Inc.*, 630 F. Supp. 244, 248 (D.N.J. 1986) (injury to defendant "far outweighs the harm that injunctive relief would impose on plaintiff" where plaintiff only had to remove "TEN" mark "from signs, letterheads and promotional materials" but was free to retain its full name "Television Enterprise Network"); *Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077, 1094 (S.D.N.Y. 1993) (enjoining defendant's use of "Miracle Gro" for its hair products, where mark was identical to plaintiff's mark used for plant food; "[A]ny hardship [to defendant] is further diminished" because "only two of [defendant's] seven hair care products bear the Miracle Gro mark. The other five products would be completely unaffected by an injunction in this case."). Requiring Acartus to change the name of one product is an inconvenience that pales in comparison to the serious harm Mobius will suffer if Acartus is allowed to piggyback on Mobius' goodwill and dilute the value of Mobius' mark. *See Dial-A-Mattress Operating Corp.*, 851 F. Supp. at 1357 ("[A]ny hardship imposed upon defendants as a result of an injunction is minimal in comparison to the potential harm to plaintiff's good name if the defendants' were permitted to continue their infringing use.").

Likewise, Acartus cannot be heard to complain that an injunction prohibiting its false advertising would unfairly affect its business. Rather, an injunction merely creates a level playing field in the marketplace. *See Castrol Inc. v. Pennzoil Co.*, 799 F. Supp. 424, 440 (D.N.J. 1992) (there is "no equitable interest in the perpetuation of an advertising campaign that is literally false"), *aff'd*, 987 F.2d 939 (3d Cir. 1993).

V.    A PRELIMINARY INJUNCTION WILL
      ADVANCE THE PUBLIC INTEREST

          The public interest favors a preliminary injunction barring Acartus from further

violating Mobius' trademark rights.  "[I]n a trademark case, [the public interest] is most often a

synonym for the right of the public not to be deceived or confused."  *Opticians Ass'n of Am. v.*

*Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (citing 2 McCarthy, § 30:21).  *Accord*

*Rockland*, 835 F. Supp. at 200.  Acartus' misuse of the Mobius mark can only lead to public

confusion, undermining the goals of the trademark laws.

          In addition, one of the purposes of section 43(a) of the Lanham Act is to protect

consumers from false advertising.    Therefore, there is a strong public interest in enjoining

Acartus' false promotional material.  *See Novartis*, 129 F. Supp. 2d at 369.  As the Court of

Appeals for the Third Circuit has observed:

> Because honesty and fair play are prominent arrows in America's
> quiver of commercial and personal ideas, Congress enacted section
> 43(a) of the Lanham Act "to stop the kind of unfair competition
> that consists of lying about goods and services."

*Castrol v. Pennzoil*, 987 F.2d at 941 (3d Cir. 1993) (citation omitted).  In this case a preliminary

injunction will protect consumers by helping to ensure that their purchasing decisions are based

on truthful information.

VI.    EXPEDITED DISCOVERY IS APPROPRIATE
       IN THIS CASE AND SHOULD BE GRANTED

          For Acartus to have constructed a product designed to migrate archives out of the

Mobius DAF format, Mobius believes that Acartus had inappropriate access to Mobius' software

and improperly copied portions of Mobius unique software code into its export utility.  (Gross

decl., ¶ 18).  To the extent that Acartus has improperly copied Mobius' software or used Mobius'

confidential and proprietary information without Mobius' consent for a competitive advantage

593190v1

21

and otherwise infringed Mobius' intellectual property rights, Acartus has engaged in unfair competition in violation of common law. To understand fully whether Mobius' rights have been further violated — which would result in further irreparable harm to Mobius — expedited discovery is necessary. (*Id.*).

The Federal Rules of Civil Procedure and the relevant authorities grant the district courts broad powers to permit expedited discovery in circumstances like these. 28 U.S.C. § 1657(a) provides that "the court shall expedite the consideration of any action . . . for . . . preliminary injunctive relief. . . ." In addition, Fed. R. Civ. P. 26(d) specifically authorizes the Court to allow discovery on an expedited basis. *See* Fed. R. Civ. P. 26(d) 1993 Advisory Committee Note (order providing for expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction").

Expedited discovery is recognized as a necessary means for ensuring timely and just determination of a dispute where the pace of normal pretrial procedures will prejudice one party or the other. For these reasons, district courts have consistently granted expedited discovery and held a hearing within a short time frame in litigation concerning violations of the Lanham Act. *S.C. Johnson & Son, Inc. v. Clorox Co.*, 930 F. Supp. 753, 756 (E.D.N.Y. 1996); *Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*, 858 F. Supp. 1268, 1269 (S.D.N.Y. 1994), *aff'd without op.*, 57 F.3d 1062 (2d Cir. 1995).

Expedited discovery should pose little hardship for Acartus. The schedule proposed by Mobius is both reasonable and necessary, calling for document production and interrogatory responses within ten calendar days of service of those discovery demands, and depositions on fifteen calendar days' notice. The discovery sought by Mobius is narrowly tailored to the issue of how Acartus developed its Mobius compatible program. Given the

narrow scope of this discovery, the proposed schedule should not be at all burdensome. (Copies of Mobius' discovery requests are annexed as Wagner decl., Exh. C). Counsel for Mobius will, of course, cooperate with counsel for Acartus to accommodate any reasonable request as to the time and place of discovery.

Conclusion

For these reasons, the Court should grant Mobius' motion for a preliminary injunction and for expedited discovery.

THE BAYARD FIRM

Kurt M. Heyman (#3054)
Linda E. Beebe (#4634)
Email:  kheyman@bayardfirm.com
Email:  lbeebe@bayardfirm.com
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

Attorneys for Plaintiff
Mobius Management Systems, Inc.

OF COUNSEL:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Randy Lipsitz
Jonathan M. Wagner
Norman C. Simon
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated:  July 5, 2005

593190v1

## CERTIFICATE OF SERVICE

Kurt M. Heyman, Esquire, hereby certifies that on July 5, 2005, copies of the foregoing Plaintiff's Memorandum in Support of its Motion for a Preliminary Injunction were served upon the following:

### VIA HAND DELIVERY

ACARTUS, INC.
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

### VIA FEDERAL EXPRESS

Anton J. Hopen, Esquire
Smith & Hopen, PA
U.S. Registered Patent Attorneys
15950 Bay Vista Drive, Suite 220
Clearwater, FL 33760

Kurt M. Heyman (# 3054)

593190v1