IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOBIUS MANAGEMENT SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-346 SLR |
| | ) | |
| ACARTUS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ACARTUS, INC.'S MOTION TO STRIKE, DISMISS AND STAY
## WITH RESPECT TO THE AMENDED COMPLAINT

Acartus, Inc. ("Acartus") on September 7, 2005 moved to dismiss the original
Complaint filed on May 31, 2005 by Mobius Management Systems, Inc. ("Mobius") because the
generic "Unfair Competition" claim set forth in that Complaint, which Mobius sought to recast
as a claim for misappropriation of trade secrets, failed as a matter of law.  Acartus moved to stay
the remainder of the case because the parties had resolved the concerns underlying the remaining
counts.

After being served with Acartus' Motion to Dismiss, Mobius filed an Amended
Complaint on September 20, 2005 alleging the same trademark, false advertising and generic
"Unfair Competition" claims asserted in the initial Complaint, but asserting an entirely new
claim (Count V) denominated "Misappropriation of Trade Secret" under the Delaware Uniform
Trade Secrets Act.  Mobius' second attempt to state a claim for trade secret misappropriation,
based on new facts not alleged in the original Complaint, also fails.

Specifically, in Count V of its Amended Complaint, Mobius alleges that Acartus
reverse-engineered a Mobius DAF file that was publicly available on the internet.  On that basis,
Mobius seeks to recover for trade secret misappropriation in Count V (and unfair competition in

Count VI).   These claims are legally deficient.   Publicly-available information cannot be the basis for a trade secret claim.   Moreover, Mobius' claim for "Unfair Competition," which merely incorporates the same allegations as Count V, should be dismissed as well.   Delaware law is clear that such a claim is preempted by the Delaware Uniform Trade Secrets Act and should be dismissed.

## STATEMENT OF FACTS

As the Court may recall, on May 31, 2005, Mobius filed a Complaint against Acartus alleging trademark infringement, false advertising, deceptive trade practices and unfair competition.   Mobius sought preliminary injunctive relief and the Court set a hearing for August 1, 2005.   (*See* Order dated July 6, 2005.)   Soon after the Complaint was filed, Acartus worked with Mobius and resolved the trademark infringement claim and temporarily resolved the false advertising claims.   The parties entered into a Stipulation, signed by the Court, on July 22, 2005. (*See* Order dated July 22, 2005.)   The hearing was vacated by that Order.   *Id.*

The remaining claim in the Complaint centered around an allegation by Mobius in Count V that Acartus "may have had access" to certain portions of Mobius' software to create its ApertureONE product.   (Complaint ¶¶ 24-26.)   In an effort to resolve the remaining "Unfair Competition" claim, and to dispel this notion, Acartus spoke with Mobius about the manner in which it created its ApertureONE product.   The parties participated in a Rule 408 settlement discussion whereby Acartus informed Mobius that: (1) the Acartus employees who were former Mobius employees did not have any involvement in the creation of ApertureONE, and (2) that Acartus did not have any access to the Mobius software.   Acartus informed Mobius that it reverse-engineered a publicly-posted DAF file to create its ApertureONE product and provided

Mobius with the website address, www.rentacoder.com where it obtained the file months before it created its ApertureONE product.

In response, Acartus received a cease and desist letter. (*See, e.g.,* Amended Complaint, ¶ 29.) Responding to that letter, Acartus explained that it had not misappropriated any trade secret belonging to Mobius and set forth a litany of caselaw supporting its position that publicly-available information could not be the basis for a trade secret claim against Acartus. Acartus attempted to resolve the issue several times thereafter to no avail, and so filed its motion to dismiss and stay. Acartus' Motion showed how Mobius' generic "Unfair Competition" claim was in the nature of a trade secret claim that is preempted by the Delaware Uniform Trade Secrets Act.

Mobius opposed the stay on the basis of a dubious damages claim relating to its alleged trademark infringement and false advertising claims. At the same time, effectively acknowledging the deficiency of its unfair competition claim, Mobius filed an Amended Complaint to assert a trade secrets claim, but now based on the parties' Rule 408 discussions. The pleading also reasserted the original claims for trademark infringement, deceptive trade practices and false advertising, including the original factual basis for those claims, as if the facts had not changed.

In reasserting its original allegations on September 20, Mobius made a number of representations allegedly true as of September 20 which simply were not true. Acartus asked Mobius to withdraw the pleading (Exhibit A), but Mobius refused, asserting cavalierly that the amendment should be "deemed" as "temporally related" to the date of the original Complaint (Exhibit B), even though the Amended Complaint relied on those allegations in alleging that,

even as of September 20, Mobius had no adequate remedy at law.  Specifically, counsel for

Acartus wrote to Mobius pointing out the following misrepresentations (Exhibit A):

- Paragraph 15 states: "Upon information and belief, Acartus sells a data management system called ApertureONE which competes directly with Mobius' ViewDirect® product.  In connection with its promotion of ApertureONE, Acartus is promoting a product called "Mobius DAF Export Utility," which purports to enable Mobius customers to migrate entire archives out of Mobius' DAF or 'Document Archive File' format into a specification that may be stored in an Acartus repository.  A copy of the promotional data sheet describing the Mobius DAF Export Utility, which is available on Acartus' website at *http://www.acartus.com/pdf/Mobius_Replacement_Strategy.pdf*, is attached as Exhibit C."  No such Exhibit was attached.

*The web site address does not exist, nor is Acartus promoting any such product.*

- Paragraph 18 states: "In addition to its improper use of the "Mobius" mark, Acartus has used the registered mark "ViewDirect" in the headline of its promotional material for ApertureONE and the MobiusDAF Export Utility.  See Exhibit C."

*That reference to a web site, which does not exist, is false.*

- Paragraph 22 states: "Acartus also states on its website that 'continuing to support a legacy archival system such as Mobius perpetrates a series of unnecessary licensing, services and maintenance costs.'"

*Nowhere on its web site does Acartus make such a statement.*

- Paragraph 23 states: "The promotional data sheet is being used in interstate commerce, including on the Acartus website."

*Nowhere on its web site does Acartus have such a promotional data sheet, nor is it otherwise being used in interstate commerce.*

- Paragraph 25 states: "Upon information and belief, at least one former Mobius employee is presently employed by Acartus.  During his employment with Mobius, that employee had access to confidential and proprietary information and trade secrets concerning Mobius' software, including Mobius' software code…."

*The employee to which Mobius is referring was in sales at Mobius and is in sales at Acartus and had no involvement whatsoever in Acartus' creation of its ApertureONE product.*

Notwithstanding notice of the foregoing misrepresentations, the Amended Complaint was not withdrawn and is the subject of Acartus present Motion to Strike, Dismiss and Stay.  However, by asking that the reasserted allegations be "deemed" to be "temporally related to the June 1, 2005 filing of the original complaint" (Exhibit B), Mobius has effectively acknowledged that the primary concerns of its original complaint are no longer true and have been fully addressed.

With respect to the new trade secret claim asserted by Mobius in Count V, the relevant factual allegations in the Amended Complaint are as follows:

- Acartus created a computer program, ApertureONE, which enables a user to transfer its data from a Mobius' DAF file format.  (¶ 24)

- Acartus reverse-engineered a Mobius DAF file to create its ApertureONE product.  (¶ 24)

- Acartus was able to reverse-engineer the Mobius DAF file from a Mobius DAF file which was posted on the internet.  (¶ 26)

Nothing in the Amended Complaint, however, alleges a confidential relationship between Acartus and Mobius.  Nothing in the Amended Complaint alleges that Mobius notified Acartus before Acartus reverse-engineered the DAF file that Mobius claimed the DAF file was a trade secret belonging to Mobius.  Nothing in the Amended Complaint alleges that the DAF file which was posted on the internet had any indication whatsoever that it was confidential and proprietary to Mobius.

Notwithstanding its second attempt, Mobius' Amended Complaint fails as a matter of law to plead trade secret misappropriation or unfair competition.

**ARGUMENT**

I.    **MOBIUS' TRADE SECRET CLAIM SHOULD BE STRICKEN UNDER RULE 12(f) IN VIEW OF RULE 408.**

As an initial matter, Mobius' newly pled claim for trade secret misappropriation runs afoul of the mandate of Rule 408 of the Federal Rules of Evidence prohibiting use of settlement discussion as a basis for liability.  Fed. R. Evid. 408 ("Evidence of conduct or statements made in compromise negotiations is likewise not admissible.").  A review of the pleadings reveals that Mobius' initial claim for unfair competition centered around the belief that Acartus "may have" had access to Mobius' software, which Acartus plainly did not.  To resolve that issue and bring the entire matter to a close, Acartus engaged in settlement discussion with Mobius and explained the manner in which it created its ApertureONE product, at which time it revealed that it had reverse-engineered the DAF file.  Acartus further explained that the DAF file was publicly available on the internet in September, 2004 at the web site www.rentacoder.com.

Absent these discussions, Mobius would not have had a basis to assert its newly pled claim for trade secret misappropriation.  Indeed, the specific allegations of Count V claim came from information obtained during settlement discussions with Acartus.  On this basis alone, Count V should be striken and dismissed.  *See Philadelphia's Church of Our Savior v. Concord Twp.*, C.A. No. 03-1766, 2004 U.S. Dist. LEXIS 15400, at *8 (E.D. Penn. July 28, 2004) ("While Rule 408 does not apply to pleadings directly, repeated decisions from this Court have held that allegations in a complaint may be striken, under Rule 12(f), as violative of these policies."); *see also Ramada Dev. Co. v. Rauch*, 644 F.2d 1097 (5th Cir. 1981) (holding that information disclosed during settlement was inadmissible).  Mobius cannot legitimately argue that the information was "otherwise discoverable" in that it was not entitled to discovery of

Acartus' reverse engineering of the DAF file because the original Complaint failed to plead a claim based on the DAF file.

## II.    MOBIUS FAILS TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION.

### A.    The Rule 12(b)(6) Standard.

Rule 12(b)(6) of the Federal Rules of Civil Procedure dictates that dismissal is warranted when a party fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12.  Although a Court will generously construe the allegations of a Complaint in the light most favorable to the plaintiff, conclusory allegations alone cannot give rise to liability.  A motion to dismiss should be granted if a plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Even under this liberal standard, Count V for Trade Secret Misappropriation does not state a claim upon which relief can be granted.

### B.    Publicly Available Information Is Not a Trade Secret.

Even if the Court were to look past Mobius' improper use of information it learned only through a Rule 408 discussion, its trade secrets claim must nonetheless be dismissed.   For liability to attach under the Delaware Uniform Trade Secrets Act, Mobius must prove that:  (a) it owns a valid trade secret; and (b) that Acartus misappropriated it.  6 Del. C. §§ 2001, 2004.  Misappropriation can occur in two ways, acquisition by improper means or by improper disclosure or use.  *Id.* § 2001(2)(a), (2)(b).  The "improper disclosure or use" standard provides relief when a person uses "a trade secret of another in circumstances where the person <u>knew</u> or had reason to know that the knowledge of the trade secret was acquired under circumstances where there was a <u>duty</u> to limit the use of the trade secret."  *Bell Helicopter*

*Textron, Inc. v. Tridair Helicopter, Inc.*, 982 F. Supp. 318, 322 (D. Del. 1997) (emphasis added). As set forth below, under no set of circumstances can Mobius establish either requisite element.

For one thing, the DAF file at issue is not a trade secret. Mobius asserts in Paragraph 30 of the Amended Complaint that Acartus' use of a publicly-available Mobius DAF file constitutes trade secret misappropriation (Complaint, ¶ 30). The Court need not determine whether the DAF file, comprised of Mobius' customer's data, constitutes a trade secret belonging to Mobius. Assuming for purposes of this Motion only that the DAF file could be so construed, it was publicly available to Acartus destroying whatever trade secret status it may have enjoyed.

"By definition a trade secret has not been placed in the public domain." *Kewanee Oil Co. v. Bieron Corp.*, 416 U.S. 470, 484 (1974). Materials posted on the internet, available to millions of internet users throughout the world, are in the public domain and cannot constitute trade secrets. *Religious Tech. Ctr. v. Luma et al.*, 908 F. Supp. 1362 (E.D. Va. 1995). Mobius' efforts to keep the material confidential do not matter. *Id.* at 1364. Notwithstanding "extraordinary efforts" to control access to alleged trade secrets in *Religious Technology Center, supra*, the ten days it was available on the internet destroyed its trade secret status. *Id.*

Posting a trade secret on the internet negated trade secret status in *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361, 1368-69 (N.D. Cal. 1995) (hereinafter "Netcom"), as well. As the court stated in *Netcom*, "once a trade secret is posted on the internet, it is effectively part of the public domain, impossible to retrieve." *Id.*

Paragraph 30 of the Amended Complaint alleges that Acartus engaged in trade secret misappropriation because it accessed a DAF file which had been posted on the internet.

As a matter of law, there was no trade secret which could have been misappropriated. The claim should be dismissed.

### C.    Reverse-Engineering a Trade Secret Is Not Misappropriation.

Even if the court were to find that the availability of the DAF file on the internet did not destroy its trade secret status, as a matter of law, Acartus did not misappropriate the DAF file when it reverse-engineered it. The United States Supreme Court has reiterated time and again that "ideas once placed before the public without the protection of a valid patent are subject to appropriation without significant restraint." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141,156 (1989). Indeed, in *Bonito*, the Court struck down a Florida statutory scheme which prohibited reverse engineering. Finding that while reverse-engineering can be prohibited by a valid patent, the Court held that a prohibition on reverse-engineering "has never been a part of state protection under the law of unfair competition or trade secrets." *Id.* at 160 (citations omitted.) Trade secret law "does not offer protection against discovery by…so-called reverse engineering…." *Id. citing Kewanee,* 416 U.S. at 476. Indeed, "the legal right to reverse-engineer a trade secret is so well established that courts and commentators have rarely perceived a need to explain the rationale for this doctrine." Samuelson, Pamela and Scotchmer, Suzanne, "*The Law and Economics of Reverse Engineering,*" 111 Yale L.J. 1575, 1583 (2002).

Reverse-engineering also does not constitute misappropriation of trade secrets pursuant to the Delaware Uniform Trade Secrets Act. Trade secret misappropriation does not occur unless the defendant used unlawful means or breached a duty of confidentiality to the plaintiff. *Smith v. Snap-On Tools Corp.*, 833 F.2d 578 (5th Cir. 1988) In short, misappropriation requires misconduct, and in this case there is none. "The party who merely downloads internet information cannot be liable for misappropriation because there is no misconduct involved in interacting with the Internet." *Netcom*, 907 F. Supp at 1368. Nothing in the Amended

Complaint alleges that Acartus posted the DAF file at issue on the internet. Nor is there any allegation that Acartus was under any obligation or duty to Mobius to preserve the DAF file's trade secrets. Moreover, by accessing the internet, Acartus did not engage in improper or unlawful conduct. A person who learns of a trade secret legitimately is free to use it which is precisely what Acartus did. *Id.* Rejecting a trade secret misappropriation claim on the basis of information on the internet for ten days, the court in *Netcom* held:

> Because there is no evidence that the Post abused any confidence, committed any impropriety, violated any court order or committed any other improper act . . . [by] down loading information from the Internet, there **is no possible liability for the Post in its acquisition of the information. This is true regardless of the documents [sic] status as a trade secret.**

*Id.* at 1369 (emphasis supplied).

Regardless of whether the materials comprising the DAF file at issue could have been a trade secret before they were made publicly available, Acartus, as a user of that information, cannot be held liable for trade secret misappropriation because it did not engage in misappropriation. The claim lies, if at all, against the person who originally posted the information on the Internet -- not Acartus. *Id.* at 1368. As such, Count V should be dismissed.

Mobius' vague reference to "other things" to which Acartus "must have had access" does not save its claim, either. They have not been identified nor can they be. Mobius' trade secret claim is based upon Acartus' access only to the DAF file. In fact, closer review of the Amended Complaint confirms this. The cease and desist letter to which Mobius refers is based solely upon Acartus' access to the DAF file. *See* Complaint, ¶ 29. The reference to other unspecified materials is a red herring, an attempt to save an otherwise deficient claim, and for the reasons set forth in Acartus' first Motion to Dismiss (D.I. 19), not a specific enough allegation to

save the deficient allegations of trade secret misappropriation in Count V.  As such, it should be dismissed.

## III.  MOBIUS' GENERIC UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED.

Mobius has added another omnibus "Unfair Competition" claim to its Amended Complaint.  Count VI, which incorporates Mobius' allegations of trade secret misappropriation, fails as a matter of law and should be dismissed.

Acartus fully briefed the issue of preemption in its first Motion to Dismiss directed to Mobius' "Unfair Competition" claim which rested on an allegation trade secret misappropriation.  Notably, in its opposition to Acartus' first motion, Mobius did not provide any authority to the contrary.

The Delaware Supreme Court has specifically held that the Delaware Uniform Trade Secrets Act "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of trade secrets."  *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002); *Ethypharm S.A. France v. Bentley Pharms., Inc.*,  C.A. No. 04-1300-SLR, 2005 U.S. Dist. LEXIS 21037 (D. Del. Sept. 26, 2005); s*ee also* 6 Del. § 2007.  Thus, Count VI should be dismissed as preempted by the Trade Secrets Act.

## IV.  THE REMAINING CLAIMS SHOULD BE STAYED.

Notwithstanding the allegations in the Amended Complaint, Mobius' claims for trademark infringement have been resolved by virtue of its consent to injunctive relief as set forth in Paragraph 1 of this Court's July 22, 2005 Order.  Moreover, counsel for Acartus and Counsel for Mobius are working toward resolution of the residual issues raised by the false advertising claim.  As such, Acartus requests that the matter be stayed pending resolution of the residual issues raised by the Amended Complaint.

## CONCLUSION

For the foregoing reasons, Acartus respectfully requests that the Court strike or dismiss Counts V and VI of the Amended Complaint, and stay the remaining counts of the Amended Complaint.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Defendant Acartus, Inc.*

OF COUNSEL:

Regan J. Fay
Meredith M. Wilkes
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.7231

Dated:  October 4, 2005
486025

CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2005, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Kurt Michael Heyman
> THE BAYARD FIRM
> 222 Delaware Avenue
> Suite 900
> P.O. Box 25130
> Wilmington, DE  19899

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on October 4, 2005 upon the following individuals in the manner indicated:

**BY HAND**:

> Kurt Michael Heyman
> THE BAYARD FIRM
> 222 Delaware Avenue
> Suite 900
> P.O. Box 25130
> Wilmington, DE  19899

**BY FACSIMILE**:

> Randy Lipsitz
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> 1177 Avenue of the Americas
> New York, NY  10036

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

479192