IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MOBIUS MANAGEMENT SYSTEMS, INC.,    :
                                                                :
                              Plaintiff,              :
                                                                :
              v.                                           :    C.A. No. 05-346 SLR
                                                                :
ACARTUS, INC.,                                      :
                                                                :
                              Defendant.           :

**MEMORANDUM OF PLAINTIFF
MOBIUS MANAGEMENT SYSTEMS IN OPPOSITION TO DEFENDANT
ACARTUS' MOTION TO STRIKE, DISMISS AND STAY THE AMENDED COMPLAINT**

THE BAYARD FIRM
Kurt M. Heyman (# 3054)
Email:  kheyman@bayardfirm.com
Linda E. Beebe (# 4634)
Email:  lbeebe@bayardfirm.com
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

Attorneys for Plaintiff
Mobius Management Systems, Inc.

OF COUNSEL:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Randy Lipsitz
Jonathan M. Wagner
Marjorie E. Sheldon
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated:  November 2, 2005

Table of Contents

Page

Nature and Stage of the Proceedings ...................................................................................1

Summary of Argument .......................................................................................................1

Counterstatement of Facts...................................................................................................3

Argument ............................................................................................................................7

I.      THE MISAPPROPRIATION CLAIM IS PROPERLY PLED
        AND SHOULD BE NEITHER STRICKEN NOR DISMISSED ...........................7

A.      The Motion to Strike Should Be Denied Because Federal Rule of
        Evidence 408 is Inapplicable .................................................................................8

B.      The Motion to Dismiss Should be Denied  Because the Amended
        Complaint States a Claim for Misappropriation of Trade Secrets.........................10

        1.      Whether the DAF files retained their  trade secret status is a
                question of fact  that cannot be resolved at the pleading
                stage ...........................................................................................................10

        2.      Reverse-engineering a misappropriated trade secret  is
                unlawful and actionable ..............................................................................13

II.     THE AMENDED COMPLAINT STATES A CLAIM FOR
        COMMON LAW UNFAIR COMPETITION ........................................................15

III.    THERE IS NO BASIS TO STAY THE TRADEMARK  AND
        FALSE ADVERTISING CLAIMS .......................................................................15

Conclusion .........................................................................................................................16

## Nature and Stage of the Proceedings

This is an action for trademark infringement, false advertising, unfair competition and misappropriation of trade secrets.  Plaintiff Mobius Management Systems respectfully submits this memorandum in opposition to defendant Acartus' Motion To Strike, Dismiss and Stay With Respect To The Amended Complaint.  By its motion, Acartus seeks to (i) strike and/or dismiss Mobius' misappropriation of trade secrets claim (Count V) based on an alleged violation of Federal Rule of Evidence 408 and for failure to state a claim, (ii) dismiss the common law unfair competition claim (Count VI) as preempted by the Delaware Trade Secrets Act, and (iii) stay the trademark and false advertising claims (Counts I-IV) on the mistaken factual ground that they have already been (or are soon to be) "resolved."  As we demonstrate below, there is no merit to any of these arguments and Acartus' motion should be denied in its entirety.

## Summary of Argument

1.     There is no basis to strike the trade secrets claim under Fed. R. Evid. 408 merely because the amended complaint alleges one fact revealed by Acartus during settlement discussions concerning its development of the ApertureONE product.  First, the rule does not apply to information that is "otherwise discoverable," as is plainly the case here.  Indeed, Acartus has long since been ordered to produce the information in question.  Second, the rule does not shield admissions of fact by defendants in settlement negotiations, which again is what happened here.  Third, Acartus itself in this litigation affirmatively relies on the fact revealed during settlement negotiations in the mistaken belief that it negates Mobius' claim, thereby undermining any conceivable argument as to admissibility.  Fourth, Acartus' argument is beside the point because Mobius' trade secrets claim encompasses far more than the fact revealed by Acartus during settlement discussions.  (*See* Argument IA).

2.      The allegations in the Amended Complaint suffice at the pleading stage to state a claim for misappropriation of trade secrets.  Whether publicly-available information retains its trade secret status is a fact-specific inquiry that cannot be resolved on a motion to dismiss.  If the information *did* retain its trade secret status, then Acartus was not entitled – under the Uniform Trade Secrets Act or the governing case law – to develop a competing product by "reverse engineering" it.  Moreover, Acartus' misuse of information temporarily posted on the internet is not the sole factual basis for Mobius' claim, and to that extent Acartus' public domain argument is irrelevant.  (*See* Argument IB).

3.      Acartus contends that the unfair competition claim should be dismissed because it "incorporates Mobius' allegations of trade secret misappropriation" and is therefore "preempted by the Trade Secrets Act."  (Acartus Mem. at 11).  But this claim also "incorporates" Mobius' allegations of false advertising, trademark infringement and false designation of origin, and Acartus does not dispute that these allegations can and do state a claim for common law unfair competition.  (*See* Argument II).

4.      Acartus' request to stay the trademark and false advertising claims is based solely on its representation that these claims have been or will shortly be "resolved" by virtue of the July 22 preliminary injunction stipulation and order.  That representation is inaccurate. Moreover, based on the plain language of the stipulation, the injunction will remain in place only until a decision after a final trial on the merits of Mobius' claims.  Nor did the stipulation and order resolve Mobius' damage claims.  (*See* Argument III).

Counterstatement of Facts[1]

Mobius and Acartus are competitors in the business of developing and marketing computer software and related products and services for the management and archiving of electronic files and data. Mobius developed and markets a product, under the Mobius tradename, called ViewDirect. Acartus – through the apparent misuse of trade secrets confidential to Mobius -- developed and began marketing a directly competing product which Acartus claimed has the same features, functionalities and abilities as Mobius' ViewDirect. To promote the product, Acartus called it "Mobius DAF Export Utility," "Mobius Replacement Solution," and "ApertureONE Extraction Utility for Mobius DAF Files." This product purported to enable current users of Mobius' software to migrate entire archives out of Mobius' format into a specification that can be stored in an Acartus repository. Acartus also disseminated false and misleading statements in promotional materials for its product denigrating the qualities and capabilities of Mobius' product. (*See* Am. Compl. (D.I. 22.) ¶¶ 15-23).

Mobius commenced this action in May 2005 by filing a complaint asserting claims for trademark infringement, false advertising, deceptive trade practices, theft of trade secrets and common law unfair competition. (D.I. 1). On July 5, 2005, Mobius moved for a preliminary injunction on its trademark and false advertising claims. (D.I. 6). At the same time, Mobius moved for expedited discovery with respect to its trade secret claim. Mobius' brief specifically stated that Mobius "believes that Acartus is using Mobius' trade secrets in reverse engineering its product. Thus, Mobius requests expedited discovery addressed to that issue." (D.I. 7 at 2). Mobius' First Request for Production of Documents thus asked for documents specifically

---

[1]     The facts set forth here are contained in the Amended Complaint ("Am. Compl."), Acartus' moving brief ("Acartus Mem."), and the October 31, 2005 Declaration of Jonathan M. Wagner, Esq. of Kramer Levin, co-counsel with The Bayard Firm to Mobius.

addressed to the trade secret issues, so that Mobius could determine the extent to which Acartus' product improperly used Mobius' trade secrets. The first document request called for production of the following four categories of documents:

- All documents concerning Mobius;

- All documents concerning ViewDirect;

- All documents concerning the development of the Acartus Migration Software; and

- Documents sufficient to identify Acartus' customers for its Migration Software product.

(Wagner Decl. Exh. A).

On July 6, 2005, the Court entered an order setting an August 1 hearing date on Mobius' preliminary injunction motion and requiring Acartus to respond to Mobius' first document request "on or before July 22, 2005." (D.I. 11). The parties subsequently agreed, by stipulation, to extend this deadline to September 12. (D.I. 16). Shortly after the hearing date had been set, Acartus agreed to a stipulated order entering a preliminary injunction with respect to Mobius' trademark and false advertising claims. Pursuant to the Stipulation and Order, entered on July 22, 2005, the injunction will remain in place "until a decision in any final trial of this action." (D.I. 12). The order did not apply – even on a provisional basis – to Mobius' trade secrets claim. Nor did the preliminary injunction order resolve Mobius' claims for damages. Accordingly, while the July 22 Stipulation and Order mooted the scheduled preliminary injunction hearing, it did not finally resolve any of the underlying claims. [2]

---

[2]     On August 17, Acartus served a second request for documents relating primarily to its trade secrets claim (but equally relevant to its trademark and false advertising claims). (Wagner Decl. Exh. B). Acartus' refusal to produce any documents concerning any of Mobius' claims in response to either request is the subject of a separate Motion to Compel being filed herewith.

The parties then engaged in settlement discussions in an effort to resolve the trade secrets claim. In the course of those discussions, as Acartus correctly explains, "Acartus spoke with Mobius about the manner in which it created its ApertureONE product." Among other things, "Acartus informed Mobius that it reverse-engineered a publicly-posted DAF file to create its ApertureONE product and provided Mobius with the website address, www.rentacoder.com where it obtained the file months before it created its ApertureONE product." (Acartus Mem. at 2-3).

On September 20, 2005, Mobius amended its complaint, adding a claim for violation of Delaware's Uniform Trade Secrets Act. (D.I. 22). With respect to the trade secrets claim, the Amended Complaint contains the following allegations:

- Upon information and belief, for Acartus to construct a product designed to migrate archives out of the Mobius DAF format, having all of the features, functionalities and abilities noted in the Acartus product literature, it was necessary for Acartus to have had inappropriate access to Mobius' software containing Mobius trade secrets and to have improperly reversed engineered and copied portions of Mobius unique software code into its export utility. (Am Compl. ¶ 24).

- Upon information and belief, at least one former Mobius employee is presently employed by Acartus. During his employment with Mobius, that employee had access to confidential proprietary information and trade secrets concerning Mobius' software, including Mobius' software code, as well as Mobius customer lists. As a Mobius employee, he had agreed to keep Mobius' proprietary information confidential. (Id. ¶ 25).

- After Mobius served its complaint in this matter, Acartus informed Mobius that it had developed its competing product having all of the features, functionalities and abilities noted in the Acartus product literature by reverse engineering DAF archive files that it had accessed from an internet site, www.rentacoder.com and that it had obtained documentation from that website. This internet posting emanated from a former Mobius licensed customer without Mobius' knowledge or consent and in violation of the confidentiality provisions in the license agreement governing the use of Mobius' products. (Id. ¶ 26).

- Upon learning of the improper internet posting of Mobius' DAF files containing Mobius trade secrets, Mobius took prompt action to protect its

trade secrets. Mobius notified the entity which caused the DAF files to be posted that it had done so improperly without Mobius' permission or authorization. In response to Mobius' requests, that entity realized its error and caused the posted files and documentation to be removed from the website. (*Id.* ¶ 28).

- On September 1, 2005, Mobius' counsel wrote Acartus' counsel to provide notice that the DAF files were posted improperly and contained confidential and trade secret information of Mobius. (*Id.* ¶ 29).

- Mobius further advised Acartus that based on well-established industry practice, Acartus at minimum should have known that (i) its access to, use and reverse engineering of the DAF files from the rentacoder.com website violated the rights of Mobius, (ii) the files contain trade secret and confidential information of Mobius, and (iii) reverse engineering thereof by Acartus was wrongful and unauthorized. Indeed, Mobius' former employee who works for Acartus should be well aware that the DAF file is a Mobius trade secret. (*Id.*).

- Mobius also noted that Acartus' future use and disclosure of any information gained by access to the posted file constituted misappropriation and misuse of Mobius trade secrets and confidential information. Nevertheless, Acartus continues to sell its product. (*Id.*).

The amended complaint goes on to note that Acartus must have had access to other Mobius' trade secrets beyond those improperly posted on the internet:

> The DAF file improperly accessed and reverse engineered by Acartus was a low level DAF file that had limited sophistication and incorporation of Mobius trade secrets. For the Acartus product to perform as advertised having all of the features, functionalities and abilities noted in the Acartus product literature, it would have been necessary for Acartus to have had improper access to and to have reverse engineered other proprietary and trade secret files of Mobius.

(*Id.* ¶ 30).

The allegations underlying the trademark and false advertising claims remained unchanged. Although, as Acartus points out, its website was revised after the original complaint was filed and some of the false and misleading promotional statements were removed (*see*

Acartus Mem. at 3-4), those statements remain relevant – at a minimum -- to Mobius' damage claim and its request for a permanent injunction.

Argument

I.    THE MISAPPROPRIATION CLAIM IS PROPERLY PLED
      AND SHOULD BE NEITHER STRICKEN NOR DISMISSED

Acartus' motion to strike or dismiss the misappropriation claim centers on a truthful allegation in the Amended Complaint – namely, Acartus' admission that it developed ApertureONE "by reverse engineering DAF archive files that it had accessed from an internet site, www.rentacoder.com." (Am. Compl. ¶ 26). Acartus first argues that the claim should be "stricken" because Acartus revealed this fact during settlement negotiations and Mobius' reliance on it violates Federal Rule of Evidence 408. Alternatively, Acartus seeks to dismiss the claim on the theories that (i) the files entered the public domain, thereby losing their trade secret status, and (ii) Acartus was at liberty to reverse engineer the files because it did not obtain them through wrongful means. Acartus overlooks, however, that this allegation is not the sole basis for Mobius' trade secrets claim. To the extent Acartus had unauthorized access to "other proprietary and trade secret files of Mobius" – as the Amended Complaint alleges (*see* ¶ 30) – these arguments are beside the point. Thus, even if the Court were to accept Acartus' far-fetched argument, Acartus' motion should still be denied because Mobius alleges Acartus had access to other Mobius trade secrets.[3]

---

[3]    Notably, despite a significant amount of correspondence between counsel regarding the allegations of the amended complaint, Acartus never raised its Rule 408 argument until filing the instant motion.

In any event, as demonstrated below, even if the fact revealed by Acartus during settlement discussions were the only factual allegation underlying Count V, there is no basis to strike or dismiss this claim.

A.    The Motion to Strike Should Be Denied Because
      Federal Rule of Evidence 408 is Inapplicable

Acartus contends that Mobius has "run[] afoul of" Federal Rule of Evidence 408 because, absent Acartus' revelation that it reverse-engineered the DAF file using information it obtained on the www.rentacoder.com website, "Mobius would not have had a basis to assert its newly pled claim for trade secret misappropriation." (Acartus Mem. at 6). Putting aside what the rule says or means, the argument is factually flawed because this is not the sole basis for Mobius' claim. As noted above, the Amended Complaint also alleges that, "[f]or the Acartus product to perform as advertised having all of the features, functionalities and abilities noted in the Acartus product literature, it would have been necessary for Acartus to have had improper access to and to have reverse engineered *other* proprietary and trade secret files of Mobius." (Am. Compl. ¶ 30). Thus even if Acartus' interpretation of Rule 408 were correct (and it is not), there is no justification for striking the claim in its entirety, particularly since, at the pleading stage and before any discovery, all of Mobius' allegations must be accepted as true and all inferences should be drawn in Mobius' favor. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

But even if Acartus' statement were the sole alleged basis for this claim, Rule 408 does not preclude Mobius from relying on it. To begin with, the rule itself states that it "does not require the exclusion of *any evidence otherwise discoverable* merely because it is presented in the course of compromise negotiations." Fed. R. Evid. 408 (emphasis added). Here, there is no question that information concerning the development of Acartus' product is "otherwise discoverable." Indeed, early on in the case, the Court ordered Acartus to produce (among other

607351v1

8

things) "all documents concerning the development of the Acartus Migration Software." (D.I. 11). Acartus' failure to comply with its Court-ordered discovery obligations obviously does not mean that this information is not "discoverable" for purposes of Rule 408. *See Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1107 (5th Cir. 1981) (explaining purpose behind the "otherwise discoverable" exclusion) (cited in Acartus Mem. at 6).

Second, and as the cases cited by Acartus itself make clear, it is well settled that "admissions of fact made by defendants during settlement negotiations" are "outside the scope of Rule 408." *Philadelphia's Church of Our Savior v. Concord Township*, C.A. No. 03-1766, 2004 U.S. Dist. LEXIS 15400, at *13 (E.D. Pa. July 28, 2004) (cited in Acartus Mem. at 6). This settled principle of law reflects the common sense notion that a party admission does not become inadmissible – and thus off limits -- merely because it is uttered in the context of settlement negotiations.

Finally, even if the rule did apply, Acartus should be precluded as a matter of equity from invoking it. On the one hand, Acartus affirmatively relies on the fact that it accessed Mobius' trade secrets from a website as supposed proof that the information had entered the public domain. (Acartus' Mem. at 7-9). At the same time, Acartus argues that this same fact – when offered by Mobius to support the opposition conclusion – is inadmissible. As icing on the cake, Acartus refuses to provide the requested (and Court-ordered) discovery, which would enable Mobius to test the veracity of Acartus' account. Acartus cannot have it both ways, and both Mobius and the Court should have access to *all* the relevant facts concerning Acartus' development of ApertureONE.

B.    The Motion to Dismiss Should be Denied
      Because the Amended Complaint States a Claim for
      Misappropriation of Trade Secrets

      1.    Whether the DAF files retained their
            trade secret status is a question of fact
            that cannot be resolved at the pleading stage

Acartus contends that "the DAF file at issue is not a trade secret" because, once posted on

the Internet, "it was publicly available to Acartus destroying whatever trade secret status it may

have enjoyed." (Acartus Mem. at 8). But as the cases – including the ones cited by Acartus –

consistently demonstrate, this issue cannot be resolved at the pleading stage as a pure matter of

law, particularly since the material in question was improperly posted and removed immediately

after Mobius found out about it and complained, and thus took all reasonable steps to preserve its

confidentiality.

In *Savor, Inc. v. FMR Corp.*, 812 A.2d 894 (Del. 2002), for example, the Delaware

Supreme Court denied a motion to dismiss a trade secrets claim that was based, in part, on the

argument that plaintiff "failed to take reasonable steps to maintain the confidentiality of its

purported trade secret":

> [A]t this stage of the proceedings, Savor gets the benefit of all
> favorable inferences. Savor alleges that its program was a unique
> set of marketing strategies and processes that combined consumer
> rebates with college investment plans. Even if the basic
> components of the program were well known, as appellees argue,
> the program still may be a protectable trade secret if it is a unique
> combination of those components. That determination, along with
> factual findings about whether Savor adequately protected the
> confidentiality of its program or whether appellees
> misappropriated it, cannot be resolved on a motion to dismiss.

812 A.2d at 897. *See also* Restatement of the Law (Third), *Unfair Competition*, § 39, cmt. g

(American Law Institute 1995) ("The precautions taken by the trade secret owner are also

relevant to . . . whether an accidental disclosure results in the loss of trade secret rights."). Even

in cases specifically involving internet postings of alleged trade secrets, "[t]he secrecy requirement is generally treated as a relative concept and requires a fact-intensive analysis." *DVD Copy Control Ass'n v. Bunner*, 10 Cal. Rptr. 3d 185, 192, 194 (Cal. App. 6th Dist. 2004) (in reversing grant of preliminary injunction on misappropriation claim, Court notes: "It is important to point out that we do not assume that the alleged trade secrets contained in [the file] became part of the public domain simply by having been published on the Internet").

Notably, Acartus does not cite any cases in which a Court decided this issue at the pleading stage, without the benefit of any discovery. With respect to the two cases Acartus cites, *Religious Technology Ctr. v. Lerma*, 908 F. Supp. 1362 (E.D. Va. 1995), involved a post-discovery motion for summary judgment, while *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 923 F. Supp. 1231 (N.D. Cal. 1995), involved a ruling on a preliminary injunction motion based on an evidentiary record. (*See* Acartus' Mem. at 8). But that is not all. Even more troubling, Acartus neglects to mention that, on reconsideration, the *Netcom* Court *revised* its prior holding – the one quoted in Acartus' brief (at p. 8) -- that posting a trade secret on the internet negates trade secret status as a matter of law. In its subsequent opinion, the court explained that publication on the Internet does *not* automatically result in loss of trade secret status:

> [T]he court believes that its statement in its September 22, 1995 order that 'posting works to the Internet makes them 'generally known' to the relevant people' is an overly broad generalization and needs to be revised. The question of when a posting causes the loss of trade secret status requires a review of the circumstances surrounding the posting and consideration of the interests of the trade secret owner, the policies favoring competition and the interests, including first amendment rights, of innocent third parties who acquire information off the Internet.

No. C-95-20091, 1997 U.S. Dist. LEXIS 23572, at *40-41 (N.D. Cal. Jan. 6, 1997). The court thus held that "sufficiently serious questions exist as to the 'secret' status of the specific processes and instructions in question to justify preliminary relief" and, notwithstanding their publication on the Internet, agreed to extend its prior injunction to plaintiff's trade secret claim. *Id.* at 42.

As Acartus correctly states, a motion to dismiss should be granted only if the plaintiff "would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (Acartus Mem. at 7). Based on the case law summarized above, Acartus cannot satisfy this stringent standard. The Amended Complaint alleges that Mobius takes appropriate steps to protect its trade secrets; that the posting was unauthorized and in violation of the governing confidentiality provisions in a license agreement; and that, upon learning of it, Mobius took prompt steps to undo the damage. (Am. Compl. ¶¶ 26-29). The Amended Complaint also alleges that, "based on well-established industry practice, Acartus at a minimum should have known" that the DAF files contained trade secret and confidential information belong to Mobius and that Acartus' access to and use of those files was wrongful and unauthorized. (*Id.* ¶ 29). *See Bell Helicopter Textron, Inc. v. Tridair Helicopters, Inc.*, 982 F. Supp. 318, 321 (D. Del. 1997) ("one method of setting forth a trade secret misappropriation cause of action is by alleging that a person *used* a trade secret of another in circumstances where the person knew *or had reason to know* that the knowledge of the trade secret was acquired under circumstances where there was a duty to limit the use of the secret") (emphasis added); *Cabot Corp. v. Thai Tantalum Inc.*, C.A. No. 12580, 1992 Del. Ch. LEXIS 150, at *4 (Del. Ch. July 22, 1992) ("One method by which it is possible to state a claim for misappropriation of a trade secret by a person who did not 'steal' the trade secret in the first

place is for plaintiff to demonstrate that either defendants knew *or had reason to know* that the trade secrets were derived from a person who had used improper means to acquire it at the time defendants acquired the trade secrets") (emphasis added). *See also* Restatement (Third), *Unfair Competition*, § 40, cmt. d ("the owner need not prove that the actor knew that its possession of the trade secret was wrongful; *it is sufficient if the actor had reason to know*," and "[s]tudious ignorance of the circumstances surrounding the acquisition of the information thus will not necessarily avoid liability") (emphasis added).

Any or all of these alleged facts, if proven, would support a jury verdict in Mobius' favor on its misappropriation claim. As the cases confirm, without the benefit of discovery – which Acartus to date has refused to provide – this issue cannot be disposed of as a matter of law at the pleading stage.

        2.    Reverse-engineering a misappropriated trade secret
             is unlawful and actionable

Acartus goes on to assert that "[e]ven if . . . the availability of the DAF file on the internet did not destroy its trade secret status," Count V still should be dismissed because "[r]everse engineering also does not constitute misappropriation of trade secrets pursuant to the Delaware Uniform Trade Secrets Act." (Acartus Mem. at 9). Contrary to what this statement misleadingly suggests, the Trade Secrets Act obviously does not entitle anyone to reverse engineer a *misappropriated* trade secret. Indeed, Acartus goes on to acknowledge that this cited principle applies only when the defendant "learns of a trade secret legitimately" and not through improper means. (*Id.* at 10). The official commentary to the Trade Secrets Act makes this clear. *See* Cmt. to Uniform Trade Secrets Act ("Discovery by 'reverse engineering" is permissible" *provided* "acquisition of the known product" was "by a fair and honest means"). The authorities that Acartus cites make the exact same point. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,

607351v1

13

489 U.S. 141, 155 (1989) (the public is free to "discover and exploit [a] trade secret through reverse engineering of products *in the public domain or by independent creation.*") (emphasis added); Pamela Samuelson and Suzanne Scotchmer, *The Law and Economics of Reverse Engineering,* 111 Yale L. J. 1575, 1582 (2002) (Reverse engineering is lawful as long as the product was acquired "by a fair and honest means, such as purchase of the item on the open market," and legal protection remains available "against a wrongful acquisition, use, or disclosure of the trade secret.").

This is not a case in which defendant purchased plaintiff's finished product in the open market and independently deconstructed it to develop a similar and competing product. Rather, Acartus essentially got its hands on the secret formula for making the product, which cannot be purchased on the open market and which is licensed to customers only pursuant to a license agreement containing confidentiality provisions. The question is whether that formula, at the time, remained a protectable trade secret and if so, whether Acartus obtained it through improper disclosure or use. Acartus' reverse engineering argument therefore begs the question. If the file *did* retain its trade secret status and Acartus knew or should have known that the file was proprietary to Mobius, then Acartus had no right to reverse engineer it, and this argument does not provide a separate and independent ground for dismissing the claim. *See, e.g., Technicon Data Systems Corp. v. Curtis 1000 Inc.*, Civ. No. 7644, 1984 Del. Ch. LEXIS 588, at *22 (August 21, 1984) (defendants' reverse engineering argument "is not dispositive because even if the [finished product] is subject to reverse engineering, [defendants] used improper means" to obtain the underlying computer technology); *Telerate Systems, Inc. v. Caro*, 689 F. Supp. 221, 233 (S.D.N.Y. 1988) ("the proper focus of inquiry is not whether an alleged trade secret can be deduced by reverse engineering but rather, whether improper means are required to access it").

II.    THE AMENDED COMPLAINT STATES A CLAIM
       FOR COMMON LAW UNFAIR COMPETITION

            Acartus maintains that the Common Law Unfair Competition claim (Count VI)
"incorporates Mobius' allegations of trade secret misappropriation" and is therefore preempted
by the Delaware Trade Secrets Act. (Acartus Mem. at 11). However, Count VI cross references
*all* of the preceding factual allegations in the complaint. The claim thus incorporates the
allegations of false advertising, trademark infringement and false designation of origin as well.
Acartus does not and cannot dispute that those allegations can and do state a claim for common
law unfair competition. *See e.g., Moore N. Am., Inc. v. Poser Bus. Forms, Inc.*, C.A. No. 97-
712-SLR, 2000 U.S. Dist. LEXIS 14650, at *2 (D. Del. Sept. 29, 2000) (claim for common law
unfair competition is co-extensive with claim under Uniform Deceptive Trade Practices Act).

III.    THERE IS NO BASIS TO STAY THE TRADEMARK
        AND FALSE ADVERTISING CLAIMS

            Lastly, Acartus asserts that the remaining counts should be stayed because the trademark
infringement and false advertising claims have been (or are soon to be) resolved, as evidenced by
the entry of the stipulated injunction order. But as Mobius explains in its Motion to Compel, this
is inaccurate. Moreover, as the July 22 Order plainly states, the stipulated injunction is
preliminary in nature, will remain in place only "until a decision in any final trial of this action,"
and does not in any event apply to Mobius' damage claims. (D.I. 12).

Conclusion

For these reasons, the Court should deny Acartus' motion in its entirety.


THE BAYARD FIRM


_____
Kurt M. Heyman (# 3054)
Email:  kheyman@bayardfirm.com
Linda E. Beebe (# 4634)
Email:  lbeebe@bayardfirm.com
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

Attorneys for Plaintiff
Mobius Management Systems, Inc.


OF COUNSEL:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Randy Lipsitz
Jonathan M. Wagner
Marjorie E. Sheldon
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated:  November 2, 2005

## **CERTIFICATE OF SERVICE**

Kurt M. Heyman, Esquire hereby certifies that on November 2, 2005, copies of the foregoing Plaintiff's Opposition to the Motion to Dismiss and Stay the Amended the Complaint were served electronically and by hand delivery on counsel listed below:

> Mary B. Graham, Esq.
> Morris, Nichols, Arsht & Tunnell
> Chase Manhattan Centre, 18th Floor
> 1201 North Market Street
> Wilmington, DE  19899-1347

Kurt M. Heyman (# 3054)