IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOBIUS MANAGEMENT SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-346 SLR |
| | ) | |
| ACARTUS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ACARTUS, INC.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO STRIKE, DISMISS
AND STAY WITH RESPECT TO THE AMENDED COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200

*Attorneys for Defendant Acartus, Inc.*

OF COUNSEL:

Regan J. Fay
Meredith M. Wilkes
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.7231

Dated:  November 21, 2005

i.

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                          ii, iii

INTRODUCTION                                                                1

I.    RULE 408 DICTATES THAT MOBIUS' ALLEGATIONS OF
      TRADE SECRET MISAPPROPRIATION BE STRICKEN FROM
      THE AMENDED COMPLAINT.                                                2

II.   MOBIUS FAILS TO STATE A CLAIM FOR TRADE SECRET
      MISAPPROPRIATION AS A MATTER OF LAW.                                  6

      A.    The Rule 12(b)(6) Standard.                                     6

      B.    To State A Claim, Mobius Must Establish A Trade Secret
            and Misappropriation Which Mobius Cannot Do.                    6

III.  MOBIUS' UNFAIR COMPETITION CLAIM SHOULD BE
      DISMISSED.                                                            12

IV.   THE REMAINING CLAIMS SHOULD BE STAYED.                               13

CONCLUSION                                                                  13

ii.

TABLE OF CITATIONS

Cases                                                                          Page(s)

*Aerospace Am., Inc. v. Abatement Techs., Inc.*,
    738 F. Supp. 1061 (E.D. Mich. 1990)                                        7

*Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)                                               6

*DM Res., Inc. v. College of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999)                                                5

*DVD Copy Control Association v. Bunner*,
    10 Cal. Rptr. 3d 185 (Cal. App. 6th Dist. 2004)                         9, 10

*Jeffrey v. Chrysler Corp.*,
    No. 97-1991, 1999 U.S. App. LEXIS 1565 (6th Cir. Jan. 29, 1999)           3, 5

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974)                                                        7

*Philadelphia's Church of Our Savior v. Concord Twp.*,
    No. 03-1766, 2004 U.S. Dist. LEXIS 15400 (E.D. Pa. July 27,
    2004)                                                                    3, 5

*Ramada Dev. Co. v. Rauch*,
    644 F.2d 1097 (5th Cir. 1981)                                         2, 3, 5

*Religious Tech. Ctr. v. Lerma*,
    908 F. Supp. 1362 (E.D. Va. 1995)                                      passim

*Religious Technology Center v. Netcom On-Line Communication Services,
    Inc.*,
    No. C-95-20091 RMW, 1997 U.S. Dist. LEXIS 23572 (N.D. Cal.
    Jan. 3, 1997)                                                            8, 9

*Savor, Inc. v. FMR Corporation*,
    812 A.2d 894 (Del. 2002)                                                9, 10

*Smith v. Snap-On Tools Corp.*,
    833 F.2d 578 (5th Cir. 1987)                                            7, 11

*Stauffer v. Bell Atl.*,
    No. 01-CV-2892, 2002 U.S. Dist. LEXIS 25718 (E.D. Pa. Feb. 19,
    2002)                                                                      6

*Underwater Storage, Inc. v. United States Rubber Co.*,
    371 F.2d 950 (D.D.C. 1966)    7

*United States v. Centracare Health Sys., Inc.*,
    No. 99-106, 2002 U.S. Dist. LEXIS 10180 (D. Minn. June 5, 2002)    3, 5

<u>Statutes</u>

*Fed. R. Civ. P. 8*    12

*Business Torts*
    Zamore, Vol. 1, § 1.01 (2002)    13

## <u>INTRODUCTION</u>

The basic, underlying facts forming the alleged basis for Mobius' new trade secret claim are not in dispute as demonstrated by Mobius' Opposition to Acartus' Motion to Strike, Dismiss and Stay the Amended Complaint.  In particular, Acartus reverse engineered a publicly-available Mobius DAF file and created a document storage program.  The DAF file that Acartus reverse engineered was available on the internet, and Mobius does not allege Acartus is the one to have put it there.  Nor does Mobius allege that Acartus had notice, *prior* to downloading the DAF file, that Mobius was claiming that it was confidential and proprietary.  (Amended Complaint, D.I. 22, ¶¶ 8-30.)  These facts dictate that Mobius' new claim for trade secret misappropriation must be dismissed because Mobius has failed to state a claim upon which relief can be granted.  The DAF file was not a trade secret *vis-a-vis* Acartus when Acartus accessed it and Acartus did not misappropriate it as a matter of law.  No amount of discovery from Acartus can change those facts.

Moreover, even if these allegations would state a cognizable claim, the claim must be stricken.  Mobius learned of the manner in which Acartus created its ApertureONE product <u>solely</u> through settlement negotiations.  In those negotiations, counsel for Acartus provided a technical white paper, prepared specially for those negotiations and clearly marked on every page as "Rule 408 - Confidential and Privileged."   That paper described how Acartus performed the simple task of "unwrapping" DAF files and identified how Acartus legitimately acquired the files.  The purpose in preparing this document, and providing it to Mobius, was in furtherance of settlement of Mobius' original complaint (focused on false advertising and trademark infringement) by addressing the larger business concern of Mobius as to how Acartus

was able to transfer customer files from the Mobius format, and by showing Acartus' good faith. Mobius is not permitted to use information it knows only because of settlement negotiations to impose liability on Acartus.

## I.     RULE 408 DICTATES THAT MOBIUS' ALLEGATIONS OF TRADE SECRET MISAPPROPRIATION BE STRICKEN FROM THE AMENDED COMPLAINT.

Mobius does not really dispute that the factual allegations which form the basis for its trade secret misappropriation claim in the Amended Complaint are the direct result of settlement negotiations with Acartus.[1] Instead, Mobius asserts that the Court should overlook its disregard of Rule 408 of the Federal Rules of Evidence on the ground that the facts forming the basis for the Amended Complaint were "otherwise discoverable" pursuant to Mobius' discovery requests of July, 2005. (*See* Mobius' Opposition at p. 8.) Mobius' analysis misses the mark.

Mobius fails to address the holding of the United States Court of Appeals for the Fifth Circuit in *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097 (5th Cir. 1981) cited in Acartus' Opening Memorandum (p. 6), where a report prepared and given to the other side in the context of settlement negotiations was held inadmissible under Rule 408. The *Ramada* Court held that the "otherwise discoverable" exception did not apply because Rule 408 is intended to prevent a party from "being able to 'immunize from admissibility

---

[1]     Mobius points to its nonspecific allegation in paragraph 30 that "it would have been necessary for Acartus to have . . . reverse engineered other proprietary and trade secret files of Mobius" as somehow creating an additional basis for the trade secret claim. Yet Mobius nowhere disputes that it was the Acartus Rule 408 white paper that caused it to bring its new claims. (Mobius Mem. in Opp. at 8.) Moreover, as noted infra (p. 10), that nonspecific allegation, with no indication as to what "other proprietary and trade secret files" it is referring to, cannot survive Acartus' motion to dismiss.

documents otherwise discoverable merely by offering them in a compromise negotiation.'" *Id* at 1107 (citation omitted).  As the Court explained, "[c]learly such an exception does not cover the present case where the . . . statement would not have existed but for the negotiations . . . ."  *Id*.  Likewise, the statements at issue in the present case would not have existed but for the settlement negotiations and should be stricken.

Similar results have been reached in other jurisdictions.  *See Jeffrey v. Chrysler Corp.*, No. 97-1991, 1999 U.S. App. LEXIS 1565 (6th Cir. Jan. 29, 1999) (granting defendant's summary judgment claim and dismissing plaintiff's discrimination claim because the job offer plaintiff sought to introduce to establish he was otherwise qualified under the Americans With Disabilities Act was made in the context of settlement negotiations); *United States v. Centracare Health Sys., Inc.*, No. 99-106, 2002 U.S. Dist. LEXIS 10180 (D. Minn. June 5, 2002) (striking portions of amended complaint because the allegations were learned during settlement negotiations.)[2]

Mobius does not offer any evidence that Acartus' reverse engineering of a DAF file available publicly on the internet was "otherwise discoverable."  It simply asserts, as if its assertion would make it so, that "the development of Acartus' product is 'otherwise discoverable,'" and suggests that Mobius might otherwise have learned of the

---

[2]     Mobius' reliance on an excerpt  from *Philadelphia's Church of Our Savior v. Concord Twp.*, No. 03-1766, 2004 U.S. Dist. LEXIS 15400, at *13 (E.D. Pa. July 27, 2004) for the proposition that admissions of fact made by defendants during settlement negotiations are outside the scope of Rule 408 is misplaced.  (Mobius' Opp. at 9.)  There is no such holding in *Philadelphia's Church*.  Indeed, the court in *Philadelphia's Church* struck the proposed allegations and did not permit the filing of an amended complaint based upon facts learned during settlement.  The court also specifically stated that "discovery would not yield any information that could lead to admissible evidence" and that plaintiff failed to meet its burden to establish that the evidence was otherwise "admissible."  *Philadelphia's Church*, at *14-15.

4.

facts in discovery had Acartus only answered Mobius' original discovery (Ans. Br. at 8). Mobius' analysis puts the cart before the horse.

The entire basis for the trade secret allegations of the Amended Complaint would not have been known to Mobius but for Acartus' good-faith attempt to resolve the matter through settlement.  Mobius initially filed a Complaint against Acartus alleging "Unfair Competition."  The initial Complaint did not have a claim for trade secret misappropriation.  (D.I. 1).  While Mobius alleged an attenuated claim that Acartus "may have had access" to Mobius' proprietary software and sought to recover on a theory of unfair competition for such acts, it said nothing about trade secret misappropriation and nothing about DAF files being misappropriated.  As a matter of law, as fully set forth in Acartus' first Motion to Dismiss, Mobius' claim for unfair competition was not actionable.  Thus, Mobius could not have engaged in discovery of any sort relevant to that count, let alone discovery of reverse engineering of DAF files that was <u>not</u> relevant.[3]

Moreover, the law in this jurisdiction is plain; until trade secrets have been identified with particularity, discovery of defendant is not permitted on the issue of trade secrets.  Mobius can hardly assert that it met this burden on the basis of its amorphous "Unfair Competition" claim in the Complaint which said nothing about DAF files.  In fact, it has effectively conceded that it did not state a claim for unfair competition.[4]

---

[3]  Nor could Mobius suggest that Acartus' reverse engineering was relevant to the other counts, which had nothing to do with how Acartus learned of the DAF file format, but instead related to Acartus' alleged use of Mobius' trademarks and its posting of a promotional data sheet on the internet.

[4]  Rather than respond to the authority cited in Acartus' first Motion to Dismiss, which established that the unfair competition claim was preempted and not actionable, Mobius filed an Amended Complaint.

5.

Discovery "is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations." *DM Res., Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). "The price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings . . . ." *Id.* at 55. Mobius' "Unfair Competition" claim did not rise to that level; thus Mobius was not entitled to <u>any</u> discovery directed to its original "Unfair Competition" claim. In that regard, Mobius' argument also fails.[5]

In short, Mobius seeks to do precisely what the plain language of Rule 408 prohibits. Mobius seeks to establish liability on the basis of information it would not have had access to but for settlement negotiations. Much as the report was inadmissible in *Ramada*, the job offer was properly excluded in *Jeffrey,* and the allegations of the amended complaint were stricken in *Alsaber*, Mobius should be prohibited from using information learned only through settlement negotiations as a predicate to establish liability. The allegations of trade secret misappropriation in the Amended Complaint should be stricken.[6]

---

[5]   To the extent Mobius is claiming that it is entitled to inferences from matters that should be stricken from the Amended Complaint, such an assertion is wrong and flies in the face of *Ramada*, *Jeffery*, *U.S.* and *Philadelphia's Church.* No such exception exists in Rule 408, nor in the interpretive case law.

[6]   The principles of equity, relied upon by Mobius at page 9 of its Opposition do not dictate a different result. It is axiomatic that one who seeks equity must do equity. Mobius is hard-pressed to seek any "equity" of the Court particularly as it relates to the Amended Complaint. As set forth in Acartus' Opening Memorandum, the Amended Complaint contains indisputably false allegations. Mobius does not refute Acartus' position, or even respond to those glaring problems.

## II.    MOBIUS FAILS TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION AS A MATTER OF LAW.

Contrary to Mobius' assertion, the viability of its claim for trade secret misappropriation is ripe for judicial determination at the pleading stage.  Mobius cannot recover against Acartus for trade secret misappropriation as a matter of law.

### A.    The Rule 12(b)(6) Standard.

Rule 12(b)(6) of the Federal Rules of Civil Procedure, while deferential to a plaintiff, does not require the Court to blindly accept Mobius "'bald assertions' or 'legal conclusions.'"  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997).  Indeed, "[c]onclusory allegations, if they stand alone, are a danger sign that plaintiff is engaged in a fishing expedition." *Stauffer v. Bell Atl.*, No. 01-CV-2892, 2002 U.S. Dist. LEXIS 25718, at *5 (E.D. Pa. Feb. 19, 2002).  Yet that is precisely what Mobius seeks.  Mobius attempts to defeat a Motion to Dismiss by asking the Court to accept as mere conclusions that a "fact dispute" precludes dismissal of its defective claim, without identifying what the fact dispute is, and then to grant it a license to engage in a fishing expedition in the hopes of finding something by which it can establish liability.  (*See* Mobius' Mem. in Opp. at 8, 13).  Mobius' request should be denied.  Even under the liberal standard of Rule 12, Mobius' factual allegations of trade secret misappropriation fail as a matter of law.

### B.    To State A Claim, Mobius Must Establish A Trade Secret and Misappropriation Which Mobius Cannot Do.

Mobius does not and cannot present this Court with a single case that supports its theory of liability that an innocent user of publicly-available information can be found to have misappropriated a trade secret.  Courts have consistently held that an innocent user of publicly-available information has not engaged in trade secret

7.

misappropriation.  *Underwater Storage, Inc. v. United States Rubber Co.*, 371 F.2d 950, 955 (D.D.C. 1966); *Religious Tech. Ctr. v. Lerma*, 908 F. Supp. 1362, 1368-69 (E.D. Va. 1995) (hereinafter "Lerma"); *Smith v. Snap-On Tools Corp.*, 833 F.2d 578, 581 (5th Cir. 1987); *Aerospace Am., Inc. v. Abatement Techs., Inc.*, 738 F. Supp. 1061, 1071 (E.D. Mich. 1990).  Thus, Acartus cannot be held liable for two independent reasons:  (1) the DAF file is not a trade secret; and (2) Acartus' proper reverse-engineering of the file is not misappropriation.

Given the well-settled law of trade secrets spelling doom for its claim, Mobius attempts to avoid dismissal by asserting that it took steps to recapture the confidentiality of the DAF file at issue, after its public release.  (*See* Mobius Mem. in Opp. at 10-11).  This assertion, true or untrue, does not save Mobius' deficient claim.  It is too little too late.

Simply put, if material is not a trade secret it cannot be misappropriated. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 484 (1974).  Information in the public domain is fair game.  Mobius' alleged attempts to retrieve the DAF file after Acartus accessed it, after Acartus created ApertureONE, after the Complaint was filed and after Acartus engaged in settlement negotiations with Mobius are irrelevant.  Mobius cannot dispute that Mobius' DAF file was publicly accessible on the internet for months, and that Acartus reverse-engineered it long before Mobius attempted to recover it from the internet.  (D.I. 22, ¶¶ 28-30).  The only way Acartus could face liability for reverse-engineering the DAF file would be if Acartus were under an obligation to Mobius to

8.

maintain the confidentiality of the DAF file, which it was not, or, if Acartus engaged in some other form of misconduct, which it did not.[7]

Mobius does not cite a shred of authority that, in this instance, accessing the internet constitutes misconduct giving rise to trade secret misappropriation. Indeed it cannot. The *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, No. C-95-20091 RMW, 1997 U.S. Dist. LEXIS 23572 (N.D. Cal. Jan. 3, 1997) (hereinafter, "Netcom") opinion relied upon by Mobius, when viewed in its totality, does not change this analysis. The court in *Netcom* held specifically that actions like those of Acartus are permissible. In *Netcom*, the court acknowledged that a party "who merely down loads" information from the internet cannot be liable for trade secret misappropriation. *Id.* at *40. Although the court did revise the district court's analysis of trade secret status, it did not retreat from the principle that accessing the internet is not misconduct giving rise to trade secret misappropriation. Indeed, the holding in *Lerma*, 908 F. Supp. at 1368, cited with approval by the court in *Netcom*, and in Acartus' Opening Memorandum, makes clear that Mobius' claim could exist, if at all, only against the person who posted the DAF file on the internet.[8] Moreover, the court in *Netcom*

---

[7]   Mobius alleges in the Amended Complaint that posting the file was in violation of the license agreement with a customer. (D.I. 22, ¶ 26). Notably, it does not produce any language from this license agreement to support such an allegation. Even if true, this allegation is not sufficient to impose liability on Acartus. Mobius does not allege, and cannot allege, that Acartus was on notice that the posting was in violation of the license agreement.

[8]   On page 8 of its Memorandum in Support of its Motion to Strike, Dismiss and Stay, Acartus inadvertently cited to *Netcom*, 907 F. Supp. at 1368 for the proposition that there is no misconduct involved in interacting with the internet. Although this principle is cited with approval by the court in *Netcom,* proper citation for this principle is found in *Lerma*, 908 F. Supp. at 1368.

emphasized that the critical issue is whether the works in question are available on the internet to potential competitors. *Netcom*, 1997 U.S. Dist. LEXIS 23572, at *41, 43. Obviously, in this instance, the DAF file was readily available.

The holdings in *Savor, Inc. v. FMR Corporation*, 812 A.2d 894 (Del. 2002) and *DVD Copy Control Association v. Bunner*, 10 Cal. Rptr. 3d 185 (Cal. App. 6th Dist. 2004) relied upon by Mobius do not save Mobius' deficient claim. *Savor* does not help Mobius because Mobius' DAF file was publicly available and therefore cannot be a trade secret. Also, while it is true in *Savor* that the court denied a motion to dismiss because the court could not determine whether adequate steps had been taken to keep the materials at issue a trade secret, the reason it could not do so was because the parties disputed the underlying facts relevant to that inquiry. *Savor*, 812 A.2d. at 897. As such, at the pleading stage, the action could proceed.

Conversely, there is no dispute here as to the underlying facts. Mobius does not dispute that the DAF file was available to Acartus on the internet; it simply makes the legal argument that the public availability of this file (for months) did not destroy its trade secret status. The plenary authority cited in Acartus' Opening Memorandum establishes this issue in Acartus' favor. No amount of discovery can change the fact that the DAF files was available on the internet, and no amount of discovery can change the fact that Acartus is not the one who posted it. No amount of discovery can change the fact that Acartus, as a competitor of Mobius, was not under an obligation to Mobius to maintain the confidentiality of the DAF file. No amount of discovery can change the fact that accessing the internet is not improper conduct.

10.

Contrary to Mobius' assertion, and unlike the facts before the court in *Savor*, the claim is ripe for determination and should be dismissed.

The holding in *DVD Copy* is similarly unhelpful to Mobius.  In *DVD Copy*, the court specifically stated that publication on the internet does not destroy trade secret status "if the publication is sufficiently obscure or transient or otherwise limited so that it does not become generally known to the relevant people, i.e. potential competitors . . . ." *DVD Copy*, 10 Cal. Rptr. 3d at 192.  Publication of the DAF file was neither transient nor obscure.  Indeed, it was available to competitors.  Thus, the qualification stated by the court in *DVD Copy* does not provide Mobius with any shelter. In fact, it dictates that the claim be dismissed.

In a last-ditch attempt to save its otherwise deficient claim, Mobius alleges that there are other (unnamed) secrets Acartus misappropriated giving rise to liability. (*See*  Mobius' Mem. in Opp. at 8).  Mobius does not explain why the overwhelming authority set forth in Acartus' first Motion to Dismiss (D.I. 19) does not apply; nor does it assert what these facts may be.  Such a conclusory allegation, for the reasons set forth in Section A, *supra.* and Acartus' first Motion to Dismiss (D.I. 19), cannot cure the defective claim.

Even if the DAF file somehow retained trade secret status notwithstanding its public availability to competitors on the internet for months, Acartus has not misappropriated it.  Mobius has confused the standard on pages 13-14 of its Opposition. Acartus' argument does not "beg the question."  It is an accurate statement of the law. Misappropriation, by definition, requires an unlawful act or breach of confidentiality. *Smith,* 833 F.2d at 579; *Lerma*, 908 F. Supp. at 1368-69 (holding that "the party who

merely down loads Internet information cannot be liable for misappropriation because there is no misconduct involved in interacting with the Internet . . . . [T]he tort of misappropriation of trade secrets is not committed . . . unless that person has used unlawful means . . . ."). There is nothing unlawful, improper or otherwise actionable about downloading information from the internet and properly reverse-engineering it. The authority upon which Mobius relies supports Acartus' position. The inquiry is whether Acartus used improper means to access the DAF file. The answer is a resounding "no." Reverse engineering is lawful and downloading information from the internet is also lawful. Thus, there has been no improper act.

Acartus did not know, nor as a matter of law should it have had "reason to know," as Mobius alleges, that a customer DAF file on the www.rentacoder.com web site was somehow proprietary to Mobius.[9] Thus, Mobius' assertions that the internet postings were "unauthorized" and that Acartus "should have known" of their alleged confidentiality are legally insufficient under Rule 12 as against Acartus. Again, the *Lerma* case clearly establishes; (a) "the person who originally posted a trade secret on the Internet may be liable," but not Acartus; and (b) "there is no possible liability for . . . acquisition of the information" off of the internet even if Acartus had been on notice that the DAF files were alleged to be a trade secret. *Lerma*, 908 F. Supp. at 1368-69.

---

[9]    This is not a case where Acartus pretended to be a licensee of Mobius in the hopes of gleaning information about the DAF file to reverse engineer it. There is no "secret formula" here as Mobius suggests on page 14 of its Opposition. The web site at issue is openly available to any person with software questions, answers or problems including Mobius, its competitors, Acartus and others. Mobius' allegations about the former employee are also a red herring as pointed out in Acartus' Opening Memorandum.

12.

In short, the DAF file posted on the internet was not a trade secret at the time it was accessed by Acartus. Moreover, even if the DAF file were considered to qualify as a trade secret for purposes of a Rule 12 Motion, reverse-engineering the DAF file obtained from the internet is not misappropriation as a matter of law. As such, Count V should be dismissed.

For the foregoing reasons Acartus respectfully requests that the Court dismiss Mobius' claim for trade secret misappropriation.

## III.    MOBIUS' UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED.

To state a claim, Mobius must allege facts sufficient to demonstrate that it is entitled to relief. Fed. R. Civ. P. 8. Mobius admits that it attempts to state a claim for Unfair Competition on the basis of a preempted claim, yet asserts that because there are other factual allegations in that claim which allegedly may constitute a cause of action, the claim should be saved. (Mobius' Opp. at 15). However, there is no authority for this proposition. The plenary authority dictates that it cannot coexist with a trade secret misappropriation claim. It is preempted. To the extent Mobius' Unfair Competition claim in Count VI is comprised of preempted trade secret allegations, those portions of the claim should be dismissed. Moreover, the claim is so amorphously stated that it fails to give notice to Acartus of any other basis for an unfair competition claim, and thus the entire claim should be dismissed. [10]

---

[10]    Count VI, captioned "Common Law of Unfair Competition," consists of two sentences: the first, in paragraph 52, simply "repeats and realleges" the allegations of all the preceding paragraphs; and the second, in paragraph 53, alleges generally that "Acartus' conduct described above constitute [sic] violations of the common law of unfair competition." Such an amorphous catch-all can hardly satisfy even the liberal notice pleading requirement. So-called "unfair competition" is actually a "broad
(continued . . .)

**IV.    THE REMAINING CLAIMS SHOULD BE STAYED.**

      Simply because the injunction applies only through trial is not a reason to proceed with continued litigation of the minimal issues which remain in this matter. Mobius does not dispute that the trademark infringement and false advertising issues are largely resolved. Instead, it seeks to increase the costs of litigation and waste judicial resources on the basis of a dubious "damages" claim. Such an assertion is non-sensical particularly in light of the minimal amount of time the alleged false advertising and trademark infringement took place. The matter should be stayed so that the residual issues can be resolved.

**CONCLUSION**

      For the foregoing reasons, Acartus respectfully requests that the Court strike or dismiss Counts V and VI of the Amended Complaint and stay the remaining counts of the Amended Complaint.

---

(. . . continued)
    category used to describe a variety of torts that impose liability in the business or economic setting." *Business Torts,* Zamore, Vol. 1, § 1.01 (2002). Mobius' Count VI makes no effort to identify what tort of unfair competition it is seeking to plead, if in fact it intended to plead something other than a preempted trade secrets claim.

14.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Mary B. Graham*

_____

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200

*Attorneys for Defendant Acartus, Inc.*

OF COUNSEL:

Regan J. Fay
Meredith M. Wilkes
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.7231

Dated:  November 21, 2005
493176

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2005, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Kurt Michael Heyman
> THE BAYARD FIRM
> 222 Delaware Avenue
> Suite 900
> P.O. Box 25130
> Wilmington, DE  19899

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on November 21, 2005 upon the following individuals in the manner indicated:

**BY FACSIMILE**:

> Kurt Michael Heyman
> THE BAYARD FIRM
> 222 Delaware Avenue
> Suite 900
> P.O. Box 25130
> Wilmington, DE  19899

> Randy Lipsitz
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> 1177 Avenue of the Americas
> New York, NY  10036

*/s/ Mary B. Graham*

_____

Mary B. Graham (#2256)

479192