# EXHIBIT B

**To The Stipulation and Order
Permitting Plaintiff Leave to File Second Amended Complaint**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MOBIUS MANAGEMENT SYSTEMS, INC.,   :
                                    :
                Plaintiff,          :
                                    :
        v.                          :    C.A. No. 05-346 SLR
                                    :
ACARTUS, INC. and EMC CORPORATION,  :    JURY TRIAL DEMANDED
                                    :
                ~~Defendant.~~      :
                Defendants.         :

### SECOND AMENDED COMPLAINT

Plaintiff Mobius Management Systems, Inc. ("Mobius") by its attorneys, ~~The Bayard Firm~~Proctor Heyman LLP and Kramer Levin Naftalis & Frankel LLP, for its second amended complaint alleges:

### Nature of the Action

1.    Mobius brings this action for trademark infringement and false advertising in violation of the Lanham Act, 15 U.S.C. §§ 1051 et seq., tortious interference with contractual relations, ~~and for~~ violations of the Uniform Deceptive Trade Practices Act, the Uniform Trade Secrets Act, and the common law of unfair competition. ~~As set forth below, defendant~~ against Acartus, Inc. ("Acartus") ~~is violating Mobius' trademark rights in the mark "Mobius," engaging in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and otherwise engaging in deceptive trade practices, trade secret misappropriation, and unfair competition.~~and its successor, EMC Corporation ("EMC").    REDACTED

REDACTED    This campaign consisted of one or more of the following elements:  (i) infringement of Mobius' trademark, (ii)

KL3:3464987.3

dissemination of false and misleading promotional statements concerning Mobius software, and (iii) theft and misuse of Mobius trade secrets, including Mobius market strategy documents and confidential proprietary information concerning Mobius software.

2.     As set forth below, defendant Acartus violated Mobius' trademark rights in the "Mobius" mark and engaged in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by making false and disparaging claims about Mobius' product in an effort to market its own competing product.  To develop that competing product, defendants Acartus and its successor EMC misappropriated (and continue to use and profit from) Mobius trade secrets and other proprietary information, which were obtained in part by tortiously inducing a former Mobius employee and customers/licensees of Mobius to breach written confidentiality agreements with Mobius.  Acartus also improperly obtained from a former Mobius employee confidential Mobius market strategy documents and used those documents to develop it own strategies to compete with Mobius.  Defendants' conduct, described in more detail below, also constitutes deceptive trade practices and unfair competition.

3.     2. By this action, Mobius seeks a halt to defendant's activities, and requests an injunction barring Acartus from to enjoin defendants from (i) infringing Mobius' trademark rights, (ii) disseminating false advertising claims about Mobius' products and services, and (iii) interfering with Mobius' contractual relations with its customers and employees, (iv) using Mobius' trade secrets and proprietary information, and (v) causing any further irreparable harm to Mobius' business and goodwill.  Mobius also seeks damages arising from defendant's defendants' unlawful acts.

2

KL3:2464987.2<u>2464987.1</u>

## The Parties, Jurisdiction and Venue

4.    3. Mobius is a Delaware corporation with its principal place of business in Rye, New York. Mobius develops, licenses and supports computer software and related products designed to optimize the storage, retrieval and presentation of data, principally transactional information. Founded in 1981, Mobius has since grown to become one of the leaders in its field, with revenues of over $88 77 million in fiscal year 2004. 2005. Mobius is a publicly traded company, listed on the NASDAQ exchange by the symbol "MOBI."

5.    Defendant Acartus, a Delaware corporation with its principal place of business in Fort Collins, Colorado, has been in the business of marketing products and services that enable clients to capture, process, index, store, and access electronically documents and data.

6.    4. Upon information and belief, defendant Acartus, Inc. is a Delaware corporation with its principal place of business in Fort Collins, Colorado. Like Mobius, Acartus Defendant EMC is a Massachusetts corporation with its principal place of business in Hopkinton, Massachusetts. Like Mobius, EMC is in the business of marketing products and services that enable clients to capture, process, index, store, and access electronically documents and data. Upon information and belief, in October 2005 EMC acquired Acartus in an all-cash transaction and is a successor-in-interest to Acartus. Pursuant to Fed. R. Civ. P. 25(c), and also because of its misuse of Mobius trade secrets, EMC is a proper party to this action. The Court has personal jurisdiction over EMC pursuant to Rule 25(c) because EMC is properly named as a successor defendant under that Rule. In any event, EMC is generally doing business in the state of Delaware and has substantial customers in Delaware.

7.    5. The Court has jurisdiction over the subject matter of this action pursuant to (i) 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) for claims arising from violations of the

KL3:3464987.9 2464987.1

Lanham Act, 15 U.S.C. §§ 1051-1127, (ii) 1338(b) for claims arising from the common law of unfair competition, and (iii) principles of supplemental jurisdiction.

       <u>8.</u>     6. Venue is properly laid in this district pursuant to 28 U.S.C. § 1391 because this is an action brought pursuant to the Lanham Act, ~~and~~ Acartus is incorporated ~~and~~<u>in Delaware, and both Acartus and EMC are</u> subject to personal jurisdiction in this ~~judicial~~ district.

The Mobius Trademark

       <u>9.</u>     7. Beginning in 1981 and continuing through today, Mobius has marketed and sold its software and related products and services under its name and trademark "Mobius."

       <u>10.</u>     8. Mobius has registered its Mobius mark with the United States Patent and Trademark Office.  A copy of Mobius' registration is attached as Exhibit A.

       <u>11.</u>     9. The Mobius mark is used in connection with Mobius' business, which principally involves providing sophisticated data processing solutions for high volume content, data management and network applications.  Mobius' packaged computer software products support a broad range of content-intensive electronic business requirements, business-to-business and business-to-customer applications, including customer relationship management, enterprise resource planning, Internet presentment and payment and imaging and workflow.  Mobius' products are sold and licensed throughout the United States and the world.  <u>In conjunction with its software products, Mobius also offers training and consultation services.</u>

       <u>12.</u>     10. Mobius' computer software and related products and services have been licensed and sold to customers in a wide range of industries, including banking, telecommunications, retail, utilities, financial, healthcare, government, insurance, manufacturing and transportation.  Mobius' products and services are currently being used by over 1300 major private or public organizations, including more than sixty percent of the Fortune 100 companies,

4

as well as governmental organizations such as the Commonwealth of Massachusetts. ~~In conjunction with its software products, Mobius also offers training and consultation services.~~

13. ~~11.~~ Mobius has been using its mark in interstate commerce regularly since 1981. In addition, over the years Mobius has spent considerable time and effort, as well as a substantial amount of money, promoting its Mobius mark and the products and services it sells under that mark. Mobius has likewise spent substantial sums in advertising for products and services bearing the Mobius trademark. The mark embodies the goodwill that Mobius has created through its promotion, sale and licensing of goods and services under that mark.

14. ~~12.~~ Mobius' trademark is an arbitrary, distinctive and strong mark. In addition, through extensive use the mark has acquired secondary meaning. Mobius' software and related products — in particular, products for high-volume document archiving, search, security, retrieval and presentation -- bearing the mark have become well-known and have been sold throughout the United States and the world.

15. ~~13.~~ In addition to the "Mobius" mark, Mobius has used since 1992 and has registered the mark "ViewDirect" with the United States Patent & Trademark Office as the trademark for one of its data-storage computer software programs. The registration is now incontestable under the federal trademark statute. A copy of Mobius' registration is attached as Exhibit B.

16. ~~14.~~ Mobius has diligently policed its marks against infringement. When appropriate, Mobius has commenced litigation to protect its marks, and has in the course thereof obtained court orders and/or agreements ~~from~~requiring defendants to cease their infringing activities. These cases include *Mobius Management Systems, Inc. v. ~~Mobius~~Mobius Solutions Incorporated,* 03 Civ. 8605 (RCC) (S.D.N.Y. filed October 30, 2003); *Mobius Management*

5

*Systems, Inc. v. Mobius Venture Capital, Inc. and Mobius VI LLC*, 03 Civ. 870 (JSR) (S.D.N.Y. filed February 6, 2003); *Mobius Management Systems, Inc. v. Symbol Technologies, Inc.*, 02 Civ. 8515 (RWS) (S.D.N.Y. filed October 24, 2002); and *Mobius Management Systems, Inc. v. Beneficial Professional Services*, LLC a/k/a BPS, LLC, 01 Civ. 2017 (LAP) (S.D.N.Y. filed March 9, 2001).

<u>~~Acartus'~~ Defendants' Trademark Infringement ~~of the "Mobius" Mark~~, False Advertising and Deceptive Trade Practices</u>

17. ~~15.~~ Upon information and belief, Acartus ~~sells~~ <u>developed and Acartus and EMC have sold</u> a data management system <u>originally</u> called ApertureONE, which competes directly with Mobius' ViewDirect® product. In connection with its promotion of ApertureONE, Acartus ~~is promoting~~ <u>also developed and promoted</u> a product <u>originally</u> called "Mobius DAF Export Utility," which ~~purports~~ <u>purported</u> to enable Mobius customers to migrate entire archives out of Mobius' DAF or "Document ~~Archive File" format~~ <u>Archival Format" file</u> into a specification that ~~may~~ <u>can</u> be stored in an Acartus <u>or EMC</u> repository. A copy of a promotional data sheet describing the Mobius DAF Export Utility, which ~~is~~ <u>was</u> available on Acartus' website at http://www.acartus.com/pdf/Mobius_~~Replacement_Strategy~~<u>ReplacementStrategy</u>.pdf, is attached as Exhibit C.

18. ~~16.~~ By incorporating the Mobius name into a mark for its own product, "Mobius DAF Export Utility," Acartus ~~has~~ violated Mobius' exclusive right to use its federally registered Mobius mark and otherwise infringed Mobius' rights in the Mobius mark.

19. ~~17.~~ Acartus' use of the Mobius mark for its export utility ~~is likely to create~~ <u>created</u> a <u>likelihood of</u> confusion, mistake and deception in the marketplace, and ~~constitutes~~ <u>constituted</u> a false designation of origin. Customers or potential customers ~~are~~ <u>were</u> likely to believe that

6

Acartus' export utility is~~is~~was either a Mobius product, ~~is~~was otherwise authorized or endorsed by Mobius or is associated with Mobius, when that ~~is~~was not the case.

20. ~~18.~~ In addition to its improper use of the "Mobius" mark, Acartus ~~has~~ used the registered mark "ViewDirect" in the headline of its promotional material for ApertureONE and the Mobius DAF Export Utility.  See Exhibit C.  This too ~~constitutes~~constituted infringement of Mobius' trademark rights.  Acartus' use of Mobius' registered mark "ViewDirect" as a headline in the promotion of its product further ~~increases~~increased the likelihood of creating confusion, mistake and deception in the marketplace.

21. ~~19.~~ Acartus' decision to use Mobius' marks ~~has been~~was without Mobius' authorization or consent.

22. ~~20.~~ In addition to its infringing use of the federally registered Mobius marks, Acartus ~~has~~ made several false and misleading statements in its promotional data sheet for its "Mobius DAF Export Utility," including but not limited to the following. Acartus ~~states~~stated that "Due to proprietary storage models such as Mobius' DAF format, continued access of this content has posed some difficult decisions for enterprises.  Companies have had to either perform a manual transformation of content, or continued to support their deep archive storage.  Manually transforming legacy content, whether performed internally or outsourced to a services group, poses a tremendous cost of time and resources."

23. ~~21.~~ These claims are false on their face.  No manual transformation of content is required in ViewDirect.  Data in ViewDirect is ~~stored~~rendered in its original format and can be distributed and printed in that format by licensed customers.  In addition, the content can be automatically transformed for presentation in web browser friendly formats using a Mobius product called DocumentDirect for the Internet.  ~~Moreover, no~~No outsourcing or services are

7

required to transform ViewDirect content for presentation purposes. And documentation and utilities are provided to licensed customers.

24. 22. Acartus also states stated on its website that "continuing to support a legacy archival system such as Mobius perpetrates a series of unnecessary licensing, services and maintenance costs." That statement is likewise false. Upon information and belief, Acartus and EMC have made other false and misleading statements concerning Mobius' or their own software, including that "our proven technology ensures migrations run smoothly and rapidly."

25. 23. The promotional data sheet is being was used in interstate commerce, including on the Acartus website.

26. In July 2005, the Court approved a stipulation executed by the parties which entered a preliminary injunction with respect to certain aspects of Mobius' trademark and false advertising claims.

### Acartus Defendants' Acts of Trade Secret Misappropriation, Tortious Interference and Unfair Competition

24. Upon information and belief, for Acartus to construct a product designed to migrate archives out of the Mobius DAF format, having all of the features, functionalities and abilities noted in the Acartus product literature, it was necessary for Acartus to have had inappropriate access to Mobius' software containing Mobius trade secrets and to have improperly reversed engineered and copied portions of Mobius unique software code into its export utility.

25. Upon information and belief, at least one former Mobius employee is presently employed by Acartus. During his employment with Mobius, that employee had access to confidential proprietary information and trade secrets concerning Mobius' software, including

8

~~Mobius' software code, as well as Mobius customer lists. As a Mobius employee, he had agreed~~
~~to keep Mobius' proprietary information confidential.~~

~~26.   After Mobius served its complaint in this matter, Acartus informed~~
~~Mobius that it had developed its competing product having all of the features, functionalities and~~
~~abilities noted in the Acartus product literature by reverse engineering DAF archive files that it~~
~~had accessed from an internet site, www.rentacoder.com and that it had obtained documentation~~
~~from that website. This internet posting emanated from a former Mobius licensed customer~~
~~without Mobius' knowledge or consent and in violation of the confidentiality provisions in the~~
~~license agreement governing the use of Mobius' products. Acartus also cited another web site~~
~~posting, but that posting concerned a different Mobius product and in any event at Mobius'~~
~~request that posting was removed.~~

27.   Mobius goes to great lengths to protect its trade secrets and other proprietary information, including maintaining them in a safe and secure place, restricting access, and prohibiting both present and former Mobius employees, as well as its customers/licensees, from reproducing or disclosing such information without Mobius' authorization or consent.

28.   All Mobius employees are bound by and required to adhere to a Code of Ethics and Business Conduct (the "Code") that is intended, among other things, to preserve the confidentiality of Mobius' proprietary information. The Code states, in relevant part:

KL3:2464987-2 2464987.1

Intellectual Property. Our Company considers its 'intellectual property' – including its inventions, processes, patents, trademarks, licenses, customers lists and trade secrets – to be valuable assets. Employees must maintain the value of our Company's intellectual property by using care to keep our trade secrets and other non-public information confidential, and limiting access to non-public information to those authorized to use it in their duties in connection with our Company's business.

* * *

Confidentiality of Information.        Employees shall not, without prior authority, give or release to anyone not employed by the Company, or to another employee who has no need for the information, data or information of a confidential nature concerning the Company or its clients. . . . Any unauthorized use or communication of trade secrets and/or customer data may result in discipline, up to and including termination, as well as civil liability.

29.    Even after they have left the company, former Mobius employees continue to be bound by the Code, specifically including its provisions prohibiting disclosure of proprietary information.

30.    Similarly, customers who use Mobius' ViewDirect data management system must enter into a license agreement that (i) makes clear that the software, documentation data, and other material supplied by Mobius are proprietary to Mobius, (ii) requires that such materials be maintained in a safe and secure place, and (iii) prohibits the licensee from reproducing such materials or disclosing them to others.

31.    Paragraph 5 of the standard Mobius License Agreement, captioned "Non-Disclosure," states:

Licensee recognizes that the computer programs, documentation manuals and other materials supplied by Mobius to Licensee are subject to the proprietary rights of Mobius.    Mobius has represented that the programs, documentation and all information or data supplied by Mobius are trade secrets of Mobius, are protected by civil and criminal law, including the law of copyrights, are very valuable to Mobius, and that their use and

10

KL3:2464937.92464987.1

disclosure must be carefully and continuously controlled. Licensee agrees that (i) all programs, documentation, and materials in machine-readable form supplied under this License shall be kept in a secure place, under access and use restrictions not less strict than those applied to Licensee's most valuable and sensitive programs. Licensee agrees to notify Mobius immediately of the unauthorized possession or use of any item supplied under this License and of other information made available to Licensee under this Agreement, by any person or organization not authorized by this Agreement to have such possession or use. . . .

32.    Paragraph 6 of the License Agreement, captioned "Non-Reproduction of Proprietary Information," states:

Licensee agrees that while this License is in effect, or while it has custody or possession of any property of Mobius, it will not, except as otherwise permitted hereby, (a) copy or duplicate, or permit anyone else to copy or duplicate, a physical or magnetic version of the computer programs, documentation or information furnished by Mobius in machine-readable or other form, (b) create or attempt to create, or permit others to create or attempt to create, by reverse engineering or otherwise, the source programs or any part thereof from the object program or from other information made available under this License or otherwise (whether oral, written, tangible or intangible). . . .

33.    Such license agreements are commonplace in the software industry.    REDACTED

REDACTED

34.    27. The Mobius DAF file formatMobius' ViewDirect software provided to customers under the license agreement described above compresses and stores customers' data in "DAF" files, the format of which is proprietary. DAF files are for the ViewDirect software's internal use only. DAF files are created only by ViewDirect and are utilized only in connection with the internal functions and operation of the ViewDirect software. The format that ViewDirect uses to store data in DAF files is a trade secret of Mobius. The DAF file format, is sophisticated and variable in nature, and able to deal with computer generated and non-computer generated information created in a wide variety of formats, including but not limited to text, laser

11

printer formatted documents, images, web formats, desktop documents, audio and video. As such, the DAF contains a number of proprietary and trade secret elements in addition to the "human visible or audible content" that enable the DAF to be used to properly find, render and present that wide variety of formats without which any converted version of the DAF would not be a complete rendition of the original. These elements include the encoding scheme, separation information with regard to the DAFs within a compound DAF, pagination and indexing information, resources such as forms, fonts and logos used to render complex laser printer formatted documents, the compression algorithm, as well as an encoding and page count facilities to insure the DAF's integrity.

35.

REDACTED

36.    Upon information and belief, for Acartus to construct a product designed to migrate archives out of the Mobius DAF format, having all of the features, functionalities and abilities noted in the Acartus product literature, it was necessary for Acartus to have had unauthorized and inappropriate access to Mobius' software and information containing Mobius trade secrets and to have improperly reversed engineered and/or copied portions of Mobius compression algorithm software code and other software features into its export utility.

37.    After Mobius served its complaint in this matter, Acartus informed Mobius that it had developed its competing product by reverse engineering DAF archive files that it had accessed from an internet site, www.rentacoder.com, and that it had obtained documentation from that website. This internet posting emanated from a former Mobius licensed customer

12

without Mobius' knowledge or consent and in violation of the confidentiality provisions in the license agreement governing the use of Mobius' products.

38.    28.—Upon learning of the improper internet posting of Mobius' DAF files containing Mobius trade secrets, Mobius took prompt corrective action to protect its trade secrets. Mobius notified the entity whichthat caused the DAF files to be posted that it had done so improperly without Mobius' permission or authorization. In response to Mobius' requests, that entity realizedacknowledged its error and caused the posted files and documentation to be removed from the website.

39.    29. On September 1, 2005, Mobius' counsel wrote to Acartus' counsel to provide notice that the DAF files werehad been posted improperly and contained confidential and trade secret information of Mobius. Mobius further advised Acartus that based on well-established industry practice, Acartus at minimum should have known that (i) its access to, use and reverse engineering of the DAF files from the rentacoder.com website violated the rights of Mobius, (ii) the files contain trade secret and confidential information of Mobius, and (iii) reverse engineering thereof by Acartus was wrongful and unauthorized. Indeed, Mobius' former employee who works for Acartus should be well aware that the DAF file is a Mobius trade secret.  Mobius also noted that Acartus'Mobius also notified Acartus that future use and disclosure of any information gained by access to the posted file constitutedwould constitute misappropriation and misuse of Mobius trade secrets and confidential information. Nevertheless, Acartus continues to sell its and now its successor EMC continue to sell their product.

40.

REDACTED

13

REDACTED

41.    ~~30.~~ The DAF ~~file~~files improperly accessed and reverse engineered by Acartus ~~was~~ awere low level DAF ~~file~~files that had limited sophistication and incorporation of Mobius trade secrets.    For the Acartus product to perform as advertised having all of the features, functionalities and abilities noted in the Acartus product literature, it would have been necessary for Acartus to have had improper access to and to have reverse engineered other proprietary and trade ~~secret files of Mobius.  Acartus' access to and reverse engineering of proprietary Mobius files and software containing Mobius trade secrets, including but not limited to the improperly posted DAF file for its own economic advantage constituted improper copying of Mobius' confidential and proprietary information without Mobius' consent and theft of trade secrets in violation of the Delaware Uniform Trade Secrets Act and the common law of unfair competition.~~secrets of Mobius.

42.    _____

REDACTED

43.    During the relevant time period and continuing to the present, at least one former Mobius employee has been employed by Acartus and then EMC.  During his employment with

14

Mobius; that employee had access to trade secrets and other proprietary information concerning Mobius' software, including Mobius' software code, Mobius customer lists, and Mobius market strategy documents. During and upon the termination of his employment by Mobius, the employee had agreed to maintain Mobius' trade secrets, customer lists and other proprietary information in confidence and not to disclose any such information to anyone else, including subsequent employers.

44. While employed by Acartus, the employee provided to Acartus internal Mobius market strategy documents and other proprietary information, in violation of the confidentiality obligations he owed to Mobius. These include but are not limited to documents labeled A15069 − 15110, A15965 − 16194, and A16216 − 16635. Mobius market strategy documents improperly in Acartus' possession and produced by Acartus in this action. Upon information and belief, Acartus improperly used this confidential Mobius information to develop strategies to compete with Mobius and to develop its competing software products.

45. Acartus' access to and reverse engineering of what it acknowledges are proprietary Mobius files and software containing Mobius trade secrets, as well as Mobius market strategy documents, constitute improper copying of Mobius' confidential and proprietary information without Mobius' consent and theft of trade secrets in violation of the Delaware Uniform Trade Secrets Act and the common law of unfair competition. Compounding the problem, Acartus acquired the necessary know-how, at least in part, by tortiously inducing a former Mobius employee and Mobius customers/licensees to breach their contractual obligations to Mobius.

15

## COUNT I
### (Trademark Infringement)

46. ~~31.~~ Mobius repeats and realleges the allegations contained in paragraphs 1 through ~~30~~45 above.

47. ~~32. Defendant's~~Acartus' use of the "Mobius" and "ViewDirect" marks ~~is likely to create~~created a likelihood confusion, mistake and deception as to the source or sponsorship of its products and ~~constitutes~~constituted infringement of Mobius' federally registered trademarks, in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

48. ~~33. Defendant's~~Acartus' acts of trademark infringement will cause irreparable harm to the business and goodwill of Mobius unless permanently restrained by this Court.

49. ~~34.~~ Mobius has no adequate remedy at law.

## COUNT II
### (False Representation/Designation of Origin)

50. ~~35.~~ Mobius repeats and realleges the allegations contained in paragraphs 1 through ~~34~~49 above.

51. ~~36. Defendant's~~Acartus' use of the "Mobius" and "ViewDirect" marks ~~constitutes~~constituted a false representation as to the source of its products or services and a false designation of origin, and ~~is likely to deceive consumers~~created a likelihood that customers would be deceived as to the source, origin, sponsorship, or authorization of defendant's services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

52. ~~37. Defendant's~~Acartus' acts of false representation and false designation of origin will cause irreparable harm to the business and goodwill of Mobius unless permanently restrained by this Court.

53. ~~38.~~ Mobius has no adequate remedy at law.

16

COUNT III
(False Advertising)

54. ~~39.~~ Mobius repeats and realleges the allegations contained in paragraphs 1 through ~~38~~53 above.

55. ~~40. Defendant has~~ Acartus made false statements about Mobius' products in its promotion of its competing product, which ~~are~~ were likely to mislead consumers and affect their purchasing decisions.

56. ~~41. Defendant's~~ Acartus' acts of false advertising will cause irreparable harm to the business and goodwill of Mobius unless permanently restrained by this Court.

57. ~~42.~~ Mobius has no adequate remedy at law.

COUNT IV
(Deceptive Trade Practices)

58. ~~43.~~ Mobius repeats and realleges the allegations contained in paragraphs 1 through ~~42~~57 above.

59. ~~44.~~ Delaware's Uniform Deceptive Trade Practices Act provides that "a person engages in a deceptive trade practice, when, in the course of a business" he engages in one of a number of acts, including: "[passing] off goods or services as those of another"; "[causing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services"; "[causing] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another"; "[representing] that goods or services have sponsorship [or] approval . . . that they do not have, or that a person has a sponsorship, approval, status, affiliation or connection that the person does not have"; "[disparaging] the goods, services, or business of another by false or misleading representation of fact"; and "[engaging] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 6 *Del. C.* §§ 2532(a)(1), (2), (3), (5), (8), (12).

17

60.    45. Acartus' actions violateviolated one or more of the foregoing sections of the

Deceptive Trade Practices Act.  Specifically, by using Mobius' marks in the promotion of its

own product, Acartus createscreated a likelihood that consumers willwould confuse the source of

Acartus' products as emanating from Mobius or willwould believe that Mobius has given its

approval to Acartus for its product, which Mobius has not.  Moreover, by making false

statements about Mobius' products in its promotion of its competing product, Acartus iswas

likely to mislead consumers and affect their purchasing decisions.

61.    46. Mobius has no adequate remedy at law for Acartus' deceptive trade practices.

Among other things, the harm is continuing and damages may be difficult to calculate.

Accordingly, injunctive relief is proper under 6 *Del. C.* §§ 2533(a).

62.    47. Moreover, Mobius has been damaged by Acartus' willful deceptive trade

practices, entitling it to monetary relief for its actual losses, damages in the amount of the

Acartus' unjust enrichment, treble damages, and attorneys' fees, pursuant to 6 *Del. C.* §§

2533(b), (c).

### COUNT V
#### (Tortious Interference with Contractual Relations)

63.    Mobius repeats and realleges the allegations contained in paragraphs 1 through 62

above.

64.    Mobius' present and former employees and its customers/licensees are

contractually obligated to maintain the confidentiality of Mobius' trade secrets and other

proprietary information belonging to Mobius.

65.    Acartus knew of these contractual obligations.  Acartus also knew that the Mobius

DAF file format and other aspects of Mobius' software and architecture as well as Mobius'

market strategy documents were proprietary to Mobius.  Nonetheless, intentionally and without

18

justification, Acartus caused at least one former Mobius employee, and one or more Mobius customers/licensees, to provide Mobius trade secrets, market strategy documents and other proprietary information to Acartus and/or EMC, in violation of their non-disclosure obligations to Mobius.

66. Mobius has no adequate remedy at law for Acartus' tortious interference. Among other things, the harm is continuing and damages may be difficult to calculate. Accordingly, Mobius is entitled to injunctive relief.

67. Moreover, Mobius has been damaged by Acartus' conduct, entitling it to monetary relief consisting of its actual losses and Acartus' unjust enrichment.

COUNT VI
(Misappropriation of Trade Secrets)

68. 48. Mobius repeats and realleges the allegations contained in paragraphs 1 through 4767 above.

69. 49. Information concerning Mobius' software and architecture, including Mobius' software code, constitutesas well as Mobius market strategy documents constitute trade secrets within the meaning of Delaware's Uniform Trade Secrets Act, *6 Del. C.* § 2001(4). Acartus has improperly accessed, reverse engineered or copied Mobius' software or, and Acartus and EMC have used Mobius' confidential and proprietary information without Mobius' consent forto gain a competitive advantage, and otherwise infringed Mobius' intellectual property rights. Acartus hasand EMC have therefore engaged in willful and malicious misappropriation of trade secrets within the meaning of *6 Del. C.* § 2001(2).

70. 50. Mobius has no adequate remedy at law for the misappropriation of its trade secrets. Among other things, the harm is continuing and damages may be difficult to calculate. Accordingly, injunctive relief is proper under *6 Del. C.* §§ 2002(a) and (c), including but not

19

limited to injunctive relief prohibiting ~~Acartus~~defendants from using Mobius' trade secrets, and
mandatory injunctive relief requiring ~~Acartus~~defendants to return all copies of Mobius' trade
secrets.   To the extent that a prohibitive injunction would be impracticable or inequitable,
Mobius is entitled to an injunction that conditions future use of its trade secrets upon payment of
a reasonable royalty, including but not limited to an appropriate percentage of any monies earned
by ~~Acartus~~defendants as a result of its misappropriation of Mobius' trade secrets, pursuant to *6
Del. C.* § 2002(b).

71.    ~~51.~~ Moreover, Mobius has been damaged by the willful and malicious
misappropriation of its trade secrets, entitling it to monetary relief for its actual losses, damages
in the amount of ~~Acartus~~defendants' unjust enrichment and/or a reasonable royalty for the use of
the trade secrets, exemplary "double" damages, and attorneys' fees, pursuant to *6 Del. C.* §§
2003, 2004.

COUNT ~~VI~~VII
(Common Law of Unfair Competition)

72.    ~~52.~~ Mobius repeats and realleges the allegations set forth in paragraphs 1 through
~~51~~71 above.

73.    ~~53.~~ Acartus' conduct described above constitute violations of the common law of
unfair competition.

Wherefore, Mobius respectfully requests that the Court:

(i)    issue ~~an~~a permanent injunction ordering that ~~defendant~~defendants and
~~its~~their officers, agents, servants, employees, successors and assigns and
all persons acting in concert or participation with them, refrain from using
in connection with the sale, offering for sale, distribution, promotion or
advertising of its services, the trademark "Mobius" or any other mark

20

incorporating the term "Mobius" or any other confusingly similar term or mark;

(ii)     issue ~~an~~a permanent injunction ordering that ~~defendant~~defendants, and their successors and assigns deliver up to the Court for destruction all merchandise, labels, signs, prints, packages, receptacles, advertisements and promotional materials bearing the trademark or trade name "Mobius" or any mark confusingly similar to "Mobius" and all plates, molds, matrices and other means of making the same;

(iii)    issue ~~an~~a permanent injunction ordering that ~~defendant deliver up to the Court for destruction all merchandise, labels, signs, prints, packages, receptacles, advertisements and promotional materials bearing the trademark or trade name "Mobius" or any mark confusingly similar to "Mobius" and all plates, molds, matrices and other means of making the same;(iv)    issue an injunction ordering that defendant and its~~defendants and their officers, agents, servants, employees, successors and assigns and all persons acting in concert or participation with them, refrain from using in connection with the sale, offering for sale, distribution, promotion or advertising of its services, Mobius' trademark "ViewDirect" or any other confusingly similar term or mark;

(~~v~~iv)     issue ~~an~~a permanent injunction ordering that ~~defendant~~defendants and ~~its~~their officers, agents, servants, employees, successors and assigns and all persons acting in concert or participation with them, refrain from any other acts likely to confuse, mislead, or deceive Mobius' customers or

members of the public that ~~defendant's~~defendants' services emanate from

Mobius or are connected with, sponsored by or approved by Mobius;

(~~vi~~v)    issue ~~an~~a permanent injunction ordering that ~~defendant~~defendants and

~~its~~their officers, agents, servants, employees, successors and assigns and

all persons acting in concert with them, refrain from assisting, aiding, or

abetting any other person or business entity in engaging in or performing

any of the wrongful activities described above;

(~~vii~~vi)    issue ~~an~~a permanent injunction ordering that ~~defendant~~defendants and

~~its~~their officers, agents, servants, employees successors and assigns and all

persons acting in concert or participation with them, refrain from falsely

stating or implying in commerce that Mobius ViewDirect requires a

manual transformation of content;

(~~viii~~vii)    issue ~~an~~a permanent injunction ordering that ~~defendant~~defendants

and ~~its~~their officers, agents, servants, employees, successors and assigns

and all persons acting in concert or participation with them, refrain from

falsely stating or implying in commerce that "continuing to support a

legacy archival system such as Mobius perpetrates a series of unnecessary

licensing, services and maintenance costs," or making any other false

statement about Mobius or its products.

(~~ix~~viii) issue ~~an~~a permanent injunction ordering that ~~defendant~~defendants, in

accordance with 15 U.S.C. § 1116, file with the Court and serve on

plaintiff within thirty days after the service on ~~defendant~~defendants of any

22

KL3:2464987.9/2464987.1

injunction issued in this action a report in writing setting forth in detail the

manner and form in which defendant has complied with the injunction;

(~~x~~ix)  award Mobius all of ~~defendant's~~defendants' profits, gains and advantages

derived from ~~defendant's~~defendants' infringement of Mobius' trademark

and false advertising, and that such sums be trebled pursuant to 15 U.S.C.

§ 1117;

(~~x~~ix)  issue an injunction pursuant to *6 Del. C.* §§ 2002(a) and (c), ordering that

~~defendant is~~defendants, and their successors and assigns, are prohibited

from using Mobius' trade secrets, and requiring defendant to return all

copies of Mobius' trade secrets~~.~~;

(xi)    issue a permanent injunction ordering defendants, and their successors and

assigns, to cease interfering with Mobius' contractual relations;

(xii)   award Mobius damages in an amount to be proved at trial, but ~~no~~not less

than $~~100,000~~10 million;

(xiii)  award Mobius, pursuant to *6 Del. C.* §§ 2003, 2004, exemplary "double"

damages on that portion of any award related to ~~defendant's~~defendants'

willful misappropriation of Mobius' trade secrets;

(xiv)   award Mobius interest on the foregoing sums;

(xv)    ~~(xv)~~ award Mobius attorneys' fees and costs and disbursements of this

action; and

(xvi)   grant such other and further relief as the Court deems just and proper.

KL3:2464987.3~~2464987.3~~

~~THE BAYARD FIRM~~

<u>PROCTOR HEYMAN LLP</u>

Kurt M. Heyman (# 3054)
~~Email: kheyman@bayardfirm.com~~
~~222 Delaware Avenue, Suite 900~~
~~P.O. Box 25130~~
<u>Patricia L. Enerio (#3728)</u>
<u>1116 West Street</u>
Wilmington, DE ~~19899~~<u>19801</u>
(302) ~~655-5000~~<u>472-7300</u>
<u>kheyman@proctorheyman.com</u>
<u>penerio@proctorheyman.com</u>
~~Attorney~~<u>*Attorneys*</u> *for Plaintiff*
*Mobius Management Systems, Inc.*

24

KL3:2464987.32664987.1

OF COUNSEL:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Randy Lipsitz (RL-1526)
Jonathan M. Wagner (JW-7197)
~~Norman C. Simon (NS-1407)~~
<u>Marjorie E. Sheldon (MS-8595)</u>
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated: ~~September 20, 2005~~<u>August</u>    , 2006

KL3.~~2464987.3~~2464987.1

Document comparison done by DeltaView on Friday, August 18, 2006 11:01:48 AM

| Input: | |
|---|---|
| Document 1 | pcdocs://kl3/2464987/2 |
| Document 2 | pcdocs://kl3/2464987/3 |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | Count |
|---|---|
| Insertions | 223 |
| Deletions | 197 |
| Moved from | 18 |
| Moved to | 18 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 456 |