IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MOBIUS MANAGEMENT SYSTEMS, INC., :
                                  :
            Plaintiff,            :
                                  :
      v.                          :     C.A. No. 05-346 SLR
                                  :
ACARTUS, INC. and EMC CORPORATION, :    **JURY TRIAL DEMANDED**
                                  :
            Defendants.           :

## SECOND AMENDED COMPLAINT

Plaintiff Mobius Management Systems, Inc. ("Mobius") by its attorneys, Proctor Heyman

LLP and Kramer Levin Naftalis & Frankel LLP, for its second amended complaint alleges:

### Nature of the Action

1.      Mobius brings this action for trademark infringement and false advertising in

violation of the Lanham Act, 15 U.S.C. §§ 1051 et seq., tortious interference with contractual

relations, and violations of the Uniform Deceptive Trade Practices Act, the Uniform Trade

Secrets Act, and the common law of unfair competition against Acartus, Inc. ("Acartus") and its

successor, EMC Corporation ("EMC").        **REDACTED**

**REDACTED**                               This campaign consisted of one or more

of the following elements:  (i) infringement of Mobius' trademark, (ii) dissemination of false and

misleading promotional statements concerning Mobius software, and (iii) theft and misuse of

Mobius trade secrets, including Mobius market strategy documents and confidential proprietary

information concerning Mobius software.

2.      As set forth below, defendant Acartus violated Mobius' trademark rights in the "Mobius" mark and engaged in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by making false and disparaging claims about Mobius' product in an effort to market its own competing product.  To develop that competing product, defendants Acartus and its successor EMC misappropriated (and continue to use and profit from) Mobius trade secrets and other proprietary information, which were obtained in part by tortiously inducing a former Mobius employee and customers/licensees of Mobius to breach written confidentiality agreements with Mobius.  Acartus also improperly obtained from a former Mobius employee confidential Mobius market strategy documents and used those documents to develop it own strategies to compete with Mobius.  Defendants' conduct, described in more detail below, also constitutes deceptive trade practices and unfair competition.

3.      By this action, Mobius seeks to enjoin defendants from (i) infringing Mobius' trademark rights, (ii) disseminating false advertising claims about Mobius' products and services, (iii) interfering with Mobius' contractual relations with its customers and employees, (iv) using Mobius' trade secrets and proprietary information, and (v) causing any further irreparable harm to Mobius' business and goodwill.  Mobius also seeks damages arising from defendants' unlawful acts.

<u>The Parties, Jurisdiction and Venue</u>

4.      Mobius is a Delaware corporation with its principal place of business in Rye, New York.  Mobius develops, licenses and supports computer software and related products designed to optimize the storage, retrieval and presentation of data, principally transactional information. Founded in 1981, Mobius has since grown to become one of the leaders in its field, with

revenues of over $77 million in fiscal year 2005. Mobius is a publicly traded company, listed on the NASDAQ exchange by the symbol "MOBI."

5.     Defendant Acartus, a Delaware corporation with its principal place of business in Fort Collins, Colorado, has been in the business of marketing products and services that enable clients to capture, process, index, store, and access electronically documents and data.

6.     Defendant EMC is a Massachusetts corporation with its principal place of business in Hopkinton, Massachusetts. Like Mobius, EMC is in the business of marketing products and services that enable clients to capture, process, index, store, and access electronically documents and data. Upon information and belief, in October 2005 EMC acquired Acartus in an all-cash transaction and is a successor-in-interest to Acartus. Pursuant to Fed. R. Civ. P. 25(c), and also because of its misuse of Mobius trade secrets, EMC is a proper party to this action. The Court has personal jurisdiction over EMC pursuant to Rule 25(c) because EMC is properly named as a successor defendant under that Rule. In any event, EMC is generally doing business in the state of Delaware and has substantial customers in Delaware.

7.     The Court has jurisdiction over the subject matter of this action pursuant to (i) 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) for claims arising from violations of the Lanham Act, 15 U.S.C. §§ 1051-1127, (ii) 1338(b) for claims arising from the common law of unfair competition, and (iii) principles of supplemental jurisdiction.

8.     Venue is properly laid in this district pursuant to 28 U.S.C. § 1391 because this is an action brought pursuant to the Lanham Act, Acartus is incorporated in Delaware, and both Acartus and EMC are subject to personal jurisdiction in this district.

## The Mobius Trademark

9.     Beginning in 1981 and continuing through today, Mobius has marketed and sold its software and related products and services under its name and trademark "Mobius."

10.     Mobius has registered its Mobius mark with the United States Patent and Trademark Office.  A copy of Mobius' registration is attached as Exhibit A.

11.     The Mobius mark is used in connection with Mobius' business, which principally involves providing sophisticated data processing solutions for high volume content, data management and network applications.  Mobius' packaged computer software products support a broad range of content-intensive electronic business requirements, business-to-business and business-to-customer applications, including customer relationship management, enterprise resource planning, Internet presentment and payment and imaging and workflow.  Mobius' products are sold and licensed throughout the United States and the world.  In conjunction with its software products, Mobius also offers training and consultation services.

12.     Mobius' computer software and related products and services have been licensed and sold to customers in a wide range of industries, including banking, telecommunications, retail, utilities, financial, healthcare, government, insurance, manufacturing and transportation. Mobius' products and services are currently being used by over 1300 major private or public organizations, including more than sixty percent of the Fortune 100 companies, as well as governmental organizations such as the Commonwealth of Massachusetts.

13.     Mobius has been using its mark in interstate commerce regularly since 1981.  In addition, over the years Mobius has spent considerable time and effort, as well as a substantial amount of money, promoting its Mobius mark and the products and services it sells under that mark.  Mobius has likewise spent substantial sums in advertising for products and services

bearing the Mobius trademark.  The mark embodies the goodwill that Mobius has created through its promotion, sale and licensing of goods and services under that mark.

14.    Mobius' trademark is an arbitrary, distinctive and strong mark.  In addition, through extensive use the mark has acquired secondary meaning.  Mobius' software and related products — in particular, products for high-volume document archiving, search, security, retrieval and presentation -- bearing the mark have become well-known and have been sold throughout the United States and the world.

15.    In addition to the "Mobius" mark, Mobius has used since 1992 and has registered the mark "ViewDirect" with the United States Patent & Trademark Office as the trademark for one of its data-storage computer software programs.  The registration is now incontestable under the federal trademark statute.  A copy of Mobius' registration is attached as Exhibit B.

16.    Mobius has diligently policed its marks against infringement.  When appropriate, Mobius has commenced litigation to protect its marks, and has in the course thereof obtained court orders and/or agreements requiring defendants to cease their infringing activities.  These cases include *Mobius Management Systems, Inc. v. Mobius Solutions Incorporated*, 03 Civ. 8605 (RCC) (S.D.N.Y. filed October 30, 2003); *Mobius Management Systems, Inc. v. Mobius Venture Capital, Inc. and Mobius VI LLC*, 03 Civ. 870 (JSR) (S.D.N.Y. filed February 6, 2003); *Mobius Management Systems, Inc. v. Symbol Technologies, Inc.*, 02 Civ. 8515 (RWS) (S.D.N.Y. filed October 24, 2002); and *Mobius Management Systems, Inc. v. Beneficial Professional Services, LLC a/k/a BPS, LLC*, 01 Civ. 2017 (LAP) (S.D.N.Y. filed March 9, 2001).

<u>Defendants' Trademark Infringement, False Advertising and Deceptive Trade Practices</u>

17.    Upon information and belief, Acartus developed and Acartus and EMC have sold a data management system originally called ApertureONE, which competes directly with Mobius' ViewDirect® product.  In connection with its promotion of ApertureONE, Acartus also

developed and promoted a product originally called "Mobius DAF Export Utility," which purported to enable Mobius customers to migrate entire archives out of Mobius' DAF or "Document Archival Format" file into a specification that can be stored in an Acartus or EMC repository. A copy of a promotional data sheet describing the Mobius DAF Export Utility, which was available on Acartus' website at http://www.acartus.com/pdf/Mobius_ReplacementStrategy.pdf, is attached as Exhibit C.

18.     By incorporating the Mobius name into a mark for its own product, "Mobius DAF Export Utility," Acartus violated Mobius' exclusive right to use its federally registered Mobius mark and otherwise infringed Mobius' rights in the Mobius mark.

19.     Acartus' use of the Mobius mark for its export utility created a likelihood of confusion, mistake and deception in the marketplace, and constituted a false designation of origin. Customers or potential customers were likely to believe that Acartus' export utility was either a Mobius product, was otherwise authorized or endorsed by Mobius or is associated with Mobius, when that was not the case.

20.     In addition to its improper use of the "Mobius" mark, Acartus used the registered mark "ViewDirect" in the headline of its promotional material for ApertureONE and the Mobius DAF Export Utility. See Exhibit C. This too constituted infringement of Mobius' trademark rights. Acartus' use of Mobius' registered mark "ViewDirect" as a headline in the promotion of its product further increased the likelihood of creating confusion, mistake and deception in the marketplace.

21.     Acartus' decision to use Mobius' marks was without Mobius' authorization or consent.

22.     In addition to its infringing use of the federally registered Mobius marks, Acartus made several false and misleading statements in its promotional data sheet for its "Mobius DAF Export Utility," including but not limited to the following. Acartus stated that "Due to proprietary storage models such as Mobius' DAF format, continued access of this content has posed some difficult decisions for enterprises. Companies have had to either perform a manual transformation of content, or continued to support their deep archive storage. Manually transforming legacy content, whether performed internally or outsourced to a services group, poses a tremendous cost of time and resources."

23.     These claims are false on their face. No manual transformation of content is required in ViewDirect. Data in ViewDirect is rendered in its original format and can be distributed and printed in that format by licensed customers. In addition, the content can be automatically transformed for presentation in web browser friendly formats using a Mobius product called DocumentDirect for the Internet. No outsourcing or services are required to transform ViewDirect content for presentation purposes. And documentation and utilities are provided to licensed customers.

24.     Acartus also stated on its website that "continuing to support a legacy archival system such as Mobius perpetrates a series of unnecessary licensing, services and maintenance costs." That statement is likewise false. Upon information and belief, Acartus and EMC have made other false and misleading statements concerning Mobius' or their own software, including that "our proven technology ensures migrations run smoothly and rapidly."

25.     The promotional data sheet was used in interstate commerce, including on the Acartus website.

26.     In July 2005, the Court approved a stipulation executed by the parties which entered a preliminary injunction with respect to certain aspects of Mobius' trademark and false advertising claims.

### Defendants' Acts of Misappropriation, Tortious Interference and Unfair Competition

27.     Mobius goes to great lengths to protect its trade secrets and other proprietary information, including maintaining them in a safe and secure place, restricting access, and prohibiting both present and former Mobius employees, as well as its customers/licensees, from reproducing or disclosing such information without Mobius' authorization or consent.

28.     All Mobius employees are bound by and required to adhere to a Code of Ethics and Business Conduct (the "Code") that is intended, among other things, to preserve the confidentiality of Mobius' proprietary information.  The Code states, in relevant part:

> Intellectual Property. Our Company considers its 'intellectual property' – including its inventions, processes, patents, trademarks, licenses, customers lists and trade secrets – to be valuable assets. Employees must maintain the value of our Company's intellectual property by using care to keep our trade secrets and other non-public information confidential, and limiting access to non-public information to those authorized to use it in their duties in connection with our Company's business.
>
> . . .
>
> Confidentiality of Information.     Employees shall not, without prior authority, give or release to anyone not employed by the Company, or to another employee who has no need for the information, data or information of a confidential nature concerning the Company or its clients. . . . Any unauthorized use or communication of trade secrets and/or customer data may result in discipline, up to and including termination, as well as civil liability.

29.     Even after they have left the company, former Mobius employees continue to be bound by the Code, specifically including its provisions prohibiting disclosure of proprietary information.

30.    Similarly, customers who use Mobius' ViewDirect data management system must enter into a license agreement that (i) makes clear that the software, documentation data, and other material supplied by Mobius are proprietary to Mobius, (ii) requires that such materials be maintained in a safe and secure place, and (iii) prohibits the licensee from reproducing such materials or disclosing them to others.

31.    Paragraph 5 of the standard Mobius License Agreement, captioned "Non-Disclosure," states:

> Licensee recognizes that the computer programs, documentation manuals and other materials supplied by Mobius to Licensee are subject to the proprietary rights of Mobius. Mobius has represented that the programs, documentation and all information or data supplied by Mobius are trade secrets of Mobius, are protected by civil and criminal law, including the law of copyrights, are very valuable to Mobius, and that their use and disclosure must be carefully and continuously controlled. Licensee agrees that (i) all programs, documentation, and materials in machine-readable form supplied under this License shall be kept in a secure place, under access and use restrictions not less strict than those applied to Licensee's most valuable and sensitive programs. Licensee agrees to notify Mobius immediately of the unauthorized possession or use of any item supplied under this License and of other information made available to Licensee under this Agreement, by any person or organization not authorized by this Agreement to have such possession or use. . . .

32.    Paragraph 6 of the License Agreement, captioned "Non-Reproduction of Proprietary Information," states:

> Licensee agrees that while this License is in effect, or while it has custody or possession of any property of Mobius, it will not, except as otherwise permitted hereby, (a) copy or duplicate, or permit anyone else to copy or duplicate, a physical or magnetic version of the computer programs, documentation or information furnished by Mobius in machine-readable or other form, (b) create or attempt to create, or permit others to create or attempt to create, by reverse engineering or otherwise, the source programs or any part thereof from the object program or from other information made available under this License or otherwise (whether oral, written, tangible or intangible). . . .

33.    Such license agreements are commonplace in the software industry.    **REDACTED**

**REDACTED**

34.    Mobius' ViewDirect software provided to customers under the license agreement described above compresses and stores customers' data in "DAF" files, the format of which is proprietary.  DAF files are for the ViewDirect software's internal use only.  DAF files are created only by ViewDirect and are utilized only in connection with the internal functions and operation of the ViewDirect software.  The format that ViewDirect uses to store data in DAF files is a trade secret of Mobius.  The DAF file format is sophisticated and variable in nature, and able to deal with computer generated and non-computer generated information created in a wide variety of formats, including but not limited to text, laser printer formatted documents, images, web formats, desktop documents, audio and video.  As such, the DAF contains a number of proprietary and trade secret elements in addition to the "human visible or audible content" that enable the DAF to be used to properly find, render and present that wide variety of formats without which any converted version of the DAF would not be a complete rendition of the original.  These elements include the encoding scheme, separation information with regard to the DAFs within a compound DAF, pagination and indexing information, resources such as forms, fonts and logos used to render complex laser printer formatted documents, the compression algorithm, as well as an encoding and page count facilities to insure the DAF's integrity.

35.

**REDACTED**

36.    Upon information and belief, for Acartus to construct a product designed to migrate archives out of the Mobius DAF format, having all of the features, functionalities and

abilities noted in the Acartus product literature, it was necessary for Acartus to have had unauthorized and inappropriate access to Mobius' software and information containing Mobius trade secrets and to have improperly reversed engineered and/or copied portions of Mobius compression algorithm software code and other software features into its export utility.

37.    After Mobius served its complaint in this matter, Acartus informed Mobius that it had developed its competing product by reverse engineering DAF archive files that it had accessed from an internet site, www.rentacoder.com, and that it had obtained documentation from that website. This internet posting emanated from a former Mobius licensed customer without Mobius' knowledge or consent and in violation of the confidentiality provisions in the license agreement governing the use of Mobius' products.

38.    Upon learning of the improper internet posting of Mobius' DAF files, Mobius took prompt corrective action to protect its trade secrets. Mobius notified the entity that caused the DAF files to be posted that it had done so improperly without Mobius' permission or authorization. In response to Mobius' requests, that entity acknowledged its error and caused the posted files and documentation to be removed from the website.

39.    On September 1, 2005, Mobius' counsel wrote to Acartus' counsel to provide notice that the DAF files had been posted improperly and contained confidential and trade secret information of Mobius. Mobius further advised Acartus that based on well-established industry practice, Acartus at minimum should have known that (i) its access to, use and reverse engineering of the DAF files from the rentacoder.com website violated the rights of Mobius, (ii) the files contain trade secret and confidential information of Mobius, and (iii) reverse engineering thereof by Acartus was wrongful and unauthorized. Mobius also notified Acartus that future use and disclosure of any information gained by access to the posted file would

constitute misappropriation and misuse of Mobius trade secrets and confidential information.
Nevertheless, Acartus and now its successor EMC continue to sell their product.

40.

REDACTED                              REDACTED

41.    The DAF files improperly accessed and reverse engineered by Acartus were low level DAF files that had limited sophistication and incorporation of Mobius trade secrets.  For the Acartus product to perform as advertised having all of the features, functionalities and abilities noted in the Acartus product literature, it would have been necessary for Acartus to have had improper access to and to have reverse engineered other proprietary and trade secrets of Mobius.

42.

REDACTED                              

43.    During the relevant time period and continuing to the present, at least one former Mobius employee has been employed by Acartus and then EMC.  During his employment with Mobius, that employee had access to trade secrets and other proprietary information concerning

Mobius' software, including Mobius' software code, Mobius customer lists, and Mobius market strategy documents. During and upon the termination of his employment by Mobius, the employee had agreed to maintain Mobius' trade secrets, customer lists and other proprietary information in confidence and not to disclose any such information to anyone else, including subsequent employers.

44.    While employed by Acartus, the employee provided to Acartus internal Mobius market strategy documents and other proprietary information, in violation of the confidentiality obligations he owed to Mobius. These include but are not limited to documents labeled A15069 – 15110, A15965 – 16194, and A16216 – 16635, Mobius market strategy documents improperly in Acartus' possession and produced by Acartus in this action. Upon information and belief, Acartus improperly used this confidential Mobius information to develop strategies to compete with Mobius and to develop its competing software products.

45.    Acartus' access to and reverse engineering of what it acknowledges are proprietary Mobius files and software containing Mobius trade secrets, as well as Mobius market strategy documents, constitute improper copying of Mobius' confidential and proprietary information without Mobius' consent and theft of trade secrets in violation of the Delaware Uniform Trade Secrets Act and the common law of unfair competition. Compounding the problem, Acartus acquired the necessary know-how, at least in part, by tortiously inducing a former Mobius employee and Mobius customers/licensees to breach their contractual obligations to Mobius.

COUNT I
(Trademark Infringement)

46.    Mobius repeats and realleges the allegations contained in paragraphs 1 through 45 above.

47.     Acartus' use of the "Mobius" and "ViewDirect" marks created a likelihood confusion, mistake and deception as to the source or sponsorship of its products and constituted infringement of Mobius' federally registered trademarks, in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

48.     Acartus' acts of trademark infringement will cause irreparable harm to the business and goodwill of Mobius unless permanently restrained by this Court.

49.     Mobius has no adequate remedy at law.

COUNT II
(False Representation/Designation of Origin)

50.     Mobius repeats and realleges the allegations contained in paragraphs 1 through 49 above.

51.     Acartus' use of the "Mobius" and "ViewDirect" marks constituted a false representation as to the source of its products or services and a false designation of origin, and created a likelihood that customers would be deceived as to the source, origin, sponsorship, or authorization of defendant's services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

52.     Acartus' acts of false representation and false designation of origin will cause irreparable harm to the business and goodwill of Mobius unless permanently restrained by this Court.

53.     Mobius has no adequate remedy at law.

COUNT III
(False Advertising)

54.     Mobius repeats and realleges the allegations contained in paragraphs 1 through 53 above.

14

55.    Acartus made false statements about Mobius' products in its promotion of its competing product, which were likely to mislead consumers and affect their purchasing decisions.

56.    Acartus' acts of false advertising will cause irreparable harm to the business and goodwill of Mobius unless permanently restrained by this Court.

57.    Mobius has no adequate remedy at law.

COUNT IV
(Deceptive Trade Practices)

58.    Mobius repeats and realleges the allegations contained in paragraphs 1 through 57 above.

59.    Delaware's Uniform Deceptive Trade Practices Act provides that "a person engages in a deceptive trade practice, when, in the course of a business" he engages in one of a number of acts, including: "[passing] off goods or services as those of another"; "[causing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services"; "[causing] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another"; "[representing] that goods or services have sponsorship [or] approval . . . that they do not have, or that a person has a sponsorship, approval, status, affiliation or connection that the person does not have"; "[disparaging] the goods, services, or business of another by false or misleading representation of fact"; and "[engaging] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 6 *Del. C.* §§ 2532(a)(1), (2), (3), (5), (8), (12).

60.    Acartus' actions violated one or more of the foregoing sections of the Deceptive Trade Practices Act.  Specifically, by using Mobius' marks in the promotion of its own product, Acartus created a likelihood that consumers would confuse the source of Acartus' products as

emanating from Mobius or would believe that Mobius has given its approval to Acartus for its product, which Mobius has not. Moreover, by making false statements about Mobius' products in its promotion of its competing product, Acartus was likely to mislead consumers and affect their purchasing decisions.

61.    Mobius has no adequate remedy at law for Acartus' deceptive trade practices. Among other things, damages may be difficult to calculate. Accordingly, injunctive relief is proper under 6 *Del. C.* §§ 2533(a).

62.    Moreover, Mobius has been damaged by Acartus' willful deceptive trade practices, entitling it to monetary relief for its actual losses, damages in the amount of Acartus' unjust enrichment, treble damages, and attorneys' fees, pursuant to 6 *Del. C.* §§ 2533(b), (c).

COUNT V
(Tortious Interference with Contractual Relations)

63.    Mobius repeats and realleges the allegations contained in paragraphs 1 through 62 above.

64.    Mobius' present and former employees and its customers/licensees are contractually obligated to maintain the confidentiality of Mobius' trade secrets and other proprietary information belonging to Mobius.

65.    Acartus knew of these contractual obligations. Acartus also knew that the Mobius DAF file format and other aspects of Mobius' software and architecture as well as Mobius' market strategy documents were proprietary to Mobius. Nonetheless, intentionally and without justification, Acartus caused at least one former Mobius employee, and one or more Mobius customers/licensees, to provide Mobius trade secrets, market strategy documents and other proprietary information to Acartus and/or EMC, in violation of their non-disclosure obligations to Mobius.

66.    Mobius has no adequate remedy at law for Acartus' tortious interference. Among other things, the harm is continuing and damages may be difficult to calculate. Accordingly, Mobius is entitled to injunctive relief.

67.    Moreover, Mobius has been damaged by Acartus' conduct, entitling it to monetary relief consisting of its actual losses and Acartus' unjust enrichment.

COUNT VI
(Misappropriation of Trade Secrets)

68.    Mobius repeats and realleges the allegations contained in paragraphs 1 through 67 above.

69.    Information concerning Mobius' software and architecture, Mobius' software code, as well as Mobius market strategy documents constitute trade secrets within the meaning of Delaware's Uniform Trade Secrets Act, 6 Del. C. § 2001(4). Acartus has improperly accessed, reverse engineered or copied Mobius' software, and Acartus and EMC have used Mobius' confidential and proprietary information without Mobius' consent to gain a competitive advantage, and otherwise infringed Mobius' intellectual property rights. Acartus and EMC have therefore engaged in willful and malicious misappropriation of trade secrets within the meaning of 6 Del. C. § 2001(2).

70.    Mobius has no adequate remedy at law for the misappropriation of its trade secrets. Among other things, the harm is continuing and damages may be difficult to calculate. Accordingly, injunctive relief is proper under 6 Del. C. §§ 2002(a) and (c), including but not limited to injunctive relief prohibiting defendants from using Mobius' trade secrets, and mandatory injunctive relief requiring defendants to return all copies of Mobius' trade secrets. To the extent that a prohibitive injunction would be impracticable or inequitable, Mobius is entitled to an injunction that conditions future use of its trade secrets upon payment of a reasonable

17

royalty, including but not limited to an appropriate percentage of any monies earned by defendants as a result of its misappropriation of Mobius' trade secrets, pursuant to *6 Del. C.* § 2002(b).

71.    Moreover, Mobius has been damaged by the willful and malicious misappropriation of its trade secrets, entitling it to monetary relief for its actual losses, damages in the amount of defendants' unjust enrichment and/or a reasonable royalty for the use of the trade secrets, exemplary "double" damages, and attorneys' fees, pursuant to *6 Del. C.* §§ 2003, 2004.

COUNT VII<br>(Common Law of Unfair Competition)

72.    Mobius repeats and realleges the allegations set forth in paragraphs 1 through 71 above.

73.    Acartus' conduct described above constitute violations of the common law of unfair competition.

Wherefore, Mobius respectfully requests that the Court:

    (i)    issue a permanent injunction ordering that defendants and their officers, agents, servants, employees, successors and assigns and all persons acting in concert or participation with them, refrain from using in connection with the sale, offering for sale, distribution, promotion or advertising of its services, the trademark "Mobius" or any other mark incorporating the term "Mobius" or any other confusingly similar term or mark;

    (ii)    issue a permanent injunction ordering that defendants, and their successors and assigns deliver up to the Court for destruction all merchandise, labels, signs, prints, packages, receptacles, advertisements and promotional

materials bearing the trademark or trade name "Mobius" or any mark confusingly similar to "Mobius" and all plates, molds, matrices and other means of making the same;

(iii)    issue a permanent injunction ordering that defendants and their officers, agents, servants, employees, successors and assigns and all persons acting in concert or participation with them, refrain from using in connection with the sale, offering for sale, distribution, promotion or advertising of its services, Mobius' trademark "ViewDirect" or any other confusingly similar term or mark;

(iv)    issue a permanent injunction ordering that defendants and their officers, agents, servants, employees, successors and assigns and all persons acting in concert or participation with them, refrain from any other acts likely to confuse, mislead, or deceive Mobius' customers or members of the public that defendants' services emanate from Mobius or are connected with, sponsored by or approved by Mobius;

(v)    issue a permanent injunction ordering that defendants and their officers, agents, servants, employees, successors and assigns and all persons acting in concert with them, refrain from assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the wrongful activities described above;

(vi)    issue a permanent injunction ordering that defendants and their officers, agents, servants, employees successors and assigns and all persons acting in concert or participation with them, refrain from falsely stating or

implying in commerce that Mobius ViewDirect requires a manual transformation of content;

(vii)   issue a permanent injunction ordering that defendants and their officers, agents, servants, employees, successors and assigns and all persons acting in concert or participation with them, refrain from falsely stating or implying in commerce that "continuing to support a legacy archival system such as Mobius perpetrates a series of unnecessary licensing, services and maintenance costs," or making any other false statement about Mobius or its products.

(viii)   issue a permanent injunction ordering that defendants, in accordance with 15 U.S.C. § 1116, file with the Court and serve on plaintiff within thirty days after the service on defendants of any injunction issued in this action a report in writing setting forth in detail the manner and form in which defendant has complied with the injunction;

(ix)   award Mobius all of defendants' profits, gains and advantages derived from defendants' infringement of Mobius' trademark and false advertising, and that such sums be trebled pursuant to 15 U.S.C. § 1117;

(x)   issue an injunction pursuant to *6 Del. C.* §§ 2002(a) and (c), ordering that defendants, and their successors and assigns, are prohibited from using Mobius' trade secrets, and requiring defendant to return all copies of Mobius' trade secrets;

(xi)   issue a permanent injunction ordering defendants, and their successors and assigns, to cease interfering with Mobius' contractual relations;

(xii)    award Mobius damages in an amount to be proved at trial, but not less than $10 million;

(xiii)    award Mobius, pursuant to *6 Del. C.* §§ 2003, 2004, exemplary "double" damages on that portion of any award related to defendants' willful misappropriation of Mobius' trade secrets;

(xiv)    award Mobius interest on the foregoing sums;

(xv)    award Mobius attorneys' fees and costs and disbursements of this action; and

(xvi)    grant such other and further relief as the Court deems just and proper.

PROCTOR HEYMAN LLP


Kurt M. Heyman (# 3054)
E-mail:  kheyman@proctorheyman.com
Patricia L. Enerio (# 3728)
E-mail:  penerio@proctorheyman.com
1116 West Street
Wilmington, DE 19801
(302) 472-7300

Attorneys for Plaintiff
Mobius Management Systems, Inc.


OF COUNSEL:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Randy Lipsitz (RL-1526)
Jonathan M. Wagner (JW-7197)
Marjorie E. Sheldon (MS-8595)
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated: September 7, 2006