EXHIBIT A

CONFIDENTIAL EXHIBIT

# EXHIBIT B

CONFIDENTIAL EXHIBIT

# EXHIBIT C

# CONFIDENTIAL EXHIBIT

# EXHIBIT D

CONFIDENTIAL EXHIBIT

# EXHIBIT E

CONFIDENTIAL EXHIBIT

EXHIBIT F

CONFIDENTIAL EXHIBIT

EXHIBIT G

CONFIDENTIAL EXHIBIT

# EXHIBIT H

CONFIDENTIAL EXHIBIT

EXHIBIT I

CONFIDENTIAL EXHIBIT

# EXHIBIT J

CONFIDENTIAL EXHIBIT

EXHIBIT K

CONFIDENTIAL EXHIBIT

EXHIBIT L

CONFIDENTIAL EXHIBIT

EXHIBIT M

CONFIDENTIAL EXHIBIT

EXHIBIT N

CONFIDENTIAL EXHIBIT

EXHIBIT O

CONFIDENTIAL EXHIBIT

EXHIBIT P

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                          - - -

 4   MOBIUS MANAGEMENT SYSTEMS, INC.,  :   CIVIL ACTION

 5              Plaintiff              :

 6        vs.                          :

 7   ACARTUS, INC.,                    :

 8              Defendant              :   NO. 05-346 (SLR)

 9                          - - -

10                          Wilmington, Delaware
                            Monday, March 27, 2006
11                          4:30 o'clock, p.m.

12                          - - -

13   BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge

14                          - - -

15   APPEARANCES:

16        PROCTOR HEYMAN LLP
          BY:  KURT M. HEYMAN, ESQ.
17
                    -and-
18
          KRAMER LEVIN NAFTALIS & FRANKEL LLP
19        BY:  JONATHAN M. WAGNER, ESQ.

20             Counsel for Plaintiff

21

22

23

24                          Valerie J. Gunning
                            Official Court Reporter
25
```

Page 2

```
 1   APPEARANCES (Continued):

 2        MORRIS, NICHOLS, ARSHT & TUNNELL
          BY:  MARY B. GRAHAM, ESQ.
 3
                    -and-
 4
          CHOATE HALL & STEWART
 5        BY:  ROBERT S. FRANK, JR., ESQ.
             (Boston, Massachussetts)
 6
               Counsel for Defendant
 7
                    - - -
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

```
 1              P R O C E E D I N G S

 2

 3        (Proceedings commenced in the courtroom,

 4   beginning at 4:30 p.m.)

 5

 6        THE COURT:  Good afternoon, counsel.

 7        MR. HEYMAN:  Good afternoon, your Honor.  I guess

 8   I'd start with an introduction.  Kurt Heyman on behalf of

 9   plaintiff Mobius, and with me is my co-counsel, Jonathan

10   Wagner from the Kramer Levin firm.

11        THE COURT:  Good afternoon.

12        MS. GRAHAM:  Good afternoon, your Honr.

13   Mary Graham on behalf Acartus, and with me this afternoon

14   is Robert Frank from the law firm of Choate Hall in

15   Boston.

16        THE COURT:  All right.  Welcome.  You actually

17   picked a nice day to be in Delaware.

18        MR. FRANK:  It certainly is.

19        THE COURT:  All right.  I take it you're here

20   because there are issues, so I usually start with plaintiff's

21   counsel.

22        MR. WAGNER:  Maybe the place to start is

23   the protective order, which I thought your Honor had

24   given a clear direction that there would be one

25   representative and that that representative be allowed
```

Page 4

```
 1   to see everything.  I got an e-mail just before the

 2   conference that Ms. Graham had some issues with that.

 3   Maybe we should hear those first and I can understand

 4   what they are.

 5        THE COURT:  All right.

 6        MR. WAGNER:  But we're obviously prepared

 7   to abide by your Honor's direction, be one representative,

 8   and the representative be allowed to see everything

 9   based on representations by all of us here that that

10   one representative is going to abide by the terms of

11   the order.  That's obviously acceptable to us.

12        THE COURT:  All right.  And the bottom line

13   is, you either have to agree on that representative or

14   you have to bring that representative in here and I have

15   to order that that representative either have or have no

16   access.

17        MR. WAGNER:  Right.  I think we told Ms. Graham

18   our representative is Andrew Sini, who's, in fact, the only

19   in-house lawyer at Mobius, and he's largely responsible for

20   reviewing licenses and contracts.  He's really not involved

21   with software development.  I assume that that is not an

22   issue.

23        MS. GRAHAM:  We had simply asked for the

24   confirmation that he wasn't involved in patent prosecution,

25   so if we get that representation, I don't believe we will
```

Page 21

1  software, that it's an exercise that could benefit from
2  having some degree of expertise applied to it besides a lay
3  judge?
4          MR. WAGNER: Well, that I think is an interesting
5  suggestion and I wouldn't dismiss it out of hand. You know,
6  I had a case like this in which I was the one who made that
7  suggestion, so, you know, I would like to -- I would like to
8  consider that request and, you know, maybe it's possible that
9  we can -- we can agree on some independent third party
10 because the answer is, I think both sides agree, either it
11 infringes our trade secrets or it doesn't, and I don't think
12 that lawyers like Mr. Frank and I, no matter how skilled we
13 are, are able to make those determinations.
14         I think this is a case that's going to boil down
15 to a battle of experts. But if it's possible that we can
16 agree on a mutually agreeable expert to examine these issues,
17 I think that that may be a viable alternative and, you know,
18 I'd discuss it with the client, but it's possible that that
19 would avoid some heartache.
20         THE COURT: All right. Thank you.
21         Let's hear from Mr. Frank about mutual exchange
22 of like information on a date certain.
23         MR. FRANK: Let me say that I believe that they
24 have an obligation to state what they think is a trade secret
25 that the defendant has used. And they need to state that

Page 22

1  with particularity because they are not entitled to take a
2  plenary walk through our software. They are entitled, I will
3  concede, if they identify things with particularity to the
4  particular parts of the -- of our code or whatever that they
5  can in good faith and allege are trade secrets.
6          And I would respectfully urge that that -- that
7  that is what the case law says, and that once they have
8  identified what that is, then your Honor can frame orders or
9  we can respond to discovery in ways that are --
10         THE COURT: But this is the problem with your
11 very well articulated response to my suggestion, which I
12 assume was basically a, no, I don't want to do this, although
13 you used nicer words.
14         This is the problem. If I do it in the two-step
15 process that I had come into this courtroom thinking was
16 most appropriate, the plaintiff will share with you its
17 most secret source code, its source code, its highly
18 confidential materials, and I suspect that, because it
19 rarely happens, that you won't throw up your hands and say,
20 Oh, I give up. We do use this information, and therefore
21 the case is over.
22         You will come back and say, We don't consider it
23 secret. We don't consider it a trade secret. We don't
24 infringe, and where am I? I am just where I am today, which
25 is I don't know whether you do, and it seems to me as though

Page 23

1  this way, particularly if the parties can agree or one or
2  both of you convince me that we have an objective expert
3  coming in, at least we are at a point where everybody is on
4  the same page, because we're exchanging the same level of
5  detail, you know exactly what they assert is their trade
6  secret. They know exactly what you assert in your mind is
7  not an infringing use and we are at least ready to go forward
8  in some fashion.
9          MR. FRANK: Let me say this: I think it is a
10 fair response to what I say that if they produce to us those
11 portions of their software that they claim are trade secrets
12 that we are using, and they make that claim in good faith,
13 then I would concede, that's a form of articulation of what
14 they claim are the secrets that we are using, and arguing
15 further about it will not be a fruitful thing, but I
16 must say that that has to be a good-faith disclosure and
17 if it is not a good-faith disclosure, if they do not have
18 a reasonable basis for believing that, A, what they are
19 disclosing is trade secret and, B, that we're using it,
20 then I think we will be entitled -- attorneys, I will
21 try to persuade you that we're entitled to attorneys'
22 fees at the end this.
23         And, frankly, I don't think they can do that.
24 I don't think they have a reasonable basis for making such
25 a disclosure. But if they choose to disclose by -- you know,

Page 24

1  if they disclose the portions of their software that
2  they claim are trade secrets that we're using, that's a
3  different -- that's, let's say, a nonverbal articulation of
4  what the trade secrets are. I can't complain about that.
5          What I do want to do, though, is make it clear
6  that that has to be a good-faith representation that they
7  have a reasonable basis for believing that we're using those
8  trade -- that code and that code or that approach is a
9  trade secret. And if they're not doing that, they are not
10 playing -- that's the misuse of the Court's process.
11         THE COURT: All right. A couple of things.
12 Number one, I want to make sure that these trade secrets are
13 all really -- we're talking about code. We're talking about
14 software. We're talking about software programs; is that
15 right?
16         MR. WAGNER: Yes.
17         THE COURT: All right. Which means that there
18 really isn't a way to articulate it without disclosing code.
19 I mean, you can summarize it all you want, but until you see
20 code, it does not make a difference.
21         So the question is how we go about deciding
22 what -- in other words, I'm trying to decide how physically
23 we do this.
24         MR. WAGNER: Well, I think your Honor's
25 suggestion of a mutual exchange is the right one, but I mean

EXHIBIT Q

CONFIDENTIAL EXHIBIT

EXHIBIT R





# Mobius ViewDirect Replacement Strategy

## ApertureONE Mobius DAF Export Utility

### The Challenges of Content Management Evolution

Enterprise content management (ECM) platforms have become a driving force of change in today's business IT infrastructure. True ECM solutions offer the allure of an end-to-end solution for creation, centralized management and universal dispersion of all content across an enterprise, with all of the resulting cost savings and critical business efficiencies. Unfortunately for most organizations, implementing or replacing an ECM platform poses a series of logistical hurdles.

Chief among these challenges is deciding the fate of enterprise reports and fixed content, which represent an enormous volume of content locked into proprietary silos. Due to proprietary storage models such as Mobius' DAF format, continued access of this content has posed some difficult decisions for enterprises. Companies have had to either perform a manual transformation of content, or continued to support their deep archive storage.

Manually transforming legacy content, whether performed internally or outsourced to a services group, poses a tremendous cost of time and resources. Continuing to support a legacy archival system such as Mobius perpetuates a series of unnecessary licensing, services and maintenance costs; at a higher level, redundant legacy support runs against to the vision and benefits of embracing a new ECM platform.

### Legacy Migration Solutions

For organizations seeking a complete Mobius replacement strategy, ApertureONE offers the Mobius DAF Export utility as part of its enterprise report management (ERM) solution. The Mobius DAF Export utility enables customers to migrate entire archives out of the DAF format and into an open-standard specification. Once normalized, this content can be stored in an ApertureONE repository for an independent ERM solution, or can be placed into a Documentum ECM platform for full content integration. Migration capabilities complement ApertureONE's ability to capture all day forward content directly from line of business systems, allowing companies to keep all content, past and present, in a single format and repository.

© Copyright 2005, Acartus, Inc. All Rights Reserved Worldwide.
enterprise report management evolved

sales 970.212.7002
web www.acartus.com

Highly Confidential
A 020235

Mobius ViewDirect Replacement Strategy
ApertureONE Mobius DAF Export Utility



## Content Ownership through Open Standards

The challenge of legacy content migration is the inability of proprietary format to reside in alternate repositories. Therefore, transforming content from one proprietary specification to another is not a true migration solution. ApertureONE converts both legacy and day-forward input to portable document format (PDF). PDF is a fully open-standard specification, designed to preserve its original content and appearance for any user who accesses a PDF document. PDF has long been the de facto standard for digital archival in both private and public sectors. An ISO standard is currently under development to designate PDF as the true standard for digital document archival.

Storing all fixed content as PDF offers several benefits, including file compression, reduced object overhead in the repository file system, and the assurance that the format will meet emerging guidelines for digital compliance. In addition to these technical and legal benefits, by adhering to open-standard storage customers take true ownership of their content, ensuring future portability and accessibility.

## ApertureONE for Documentum: Integrated Report Management

For companies exploring or replacing their Mobius platform with Documentum, ApertureONE offers significant value. The only scalable, cross-platform ERM integration for Documentum, ApertureONE captures, processes and places fixed content into the Documentum content repository. A deep, server-level integration, ApertureONE uses Documentum APIs to store content with applied content-process fusion, such as workflow initiation, security, lifecycle and records management. Through this integration, Documentum customers achieve full ERM/IDARS capabilities through their ECM platform.

## Beyond Archival: ERM Evolved

Acartus is committed to providing scalable, open standards solutions. Through ApertureONE, customers can leverage the Mobius DAF export module to rescue high volumes of valuable fixed content locked in deep archives. Our proven technology ensures migrations run smoothly and rapidly, without the considerable investment and questionable reliability of custom, one-off solutions. Once migrated, customers can expect that all legacy and day forward fixed content will be uniformly stored in an open-standard format. ApertureONE also offers Distribution Server and Mining Server, which further extends the value of fixed content. Distribution Server delivers true email distribution of content. Mining Server offers the exclusive ability to leverage the entire ERM repository as a data warehouse. Mining Server performs deep mining and makes this data available to both business intelligence platforms (Cognos, Business Objects, MicroStrategy etc.) and reporting tools (Crystal Reports, etc.).

With enterprise-class scalability, open-standards storage, cross-platform capability, and the ability to perform content aware migrations of files stored in Mobius DAF format, ApertureONE provides a solution for organizations seeking to move their fixed content out of Mobius repository silos. For more information about ApertureONE ERM solutions, including legacy migration, independent and integrated report management, distribution or mining services, please call 970.212.7002 to speak with an ApertureONE product sales representative.

© Copyright 2005, Acartus, Inc. All Rights Reserved Worldwide
enterprise report management evolved

sales 970.212.7002
web www.acartus.com

Highly Confidential
A 020236

# EXHIBIT S

CONFIDENTIAL EXHIBIT